BENJ. T. RUSSELL, plaintiff in error, vs. ELIZABETH A. KEAR-NEY, defendant in error.

[1.] The acts of Congress of 1790, and 1804, providing for the admissibilty of exemplifications of records, &c., do not extend to the case of exemplification of the record of a private writing recorded under a registry law.

[2.] A party has no right to complain that evidence, is admitted after the close of the evidence, unless he is less prepared to meet it when admitted, than he would have been had it been admitted at the proper stage of the trial.

[3.] That an estate is given to A. for life, or years, and, to B. in remainder, does not make A. the trustee of B. as to B's remainder.

[4.] In trover by one having a partial interest in the chattel converted, he can recover only an equivalent for his interest.

[5.] The doctrine, that a voluntary conveyance must yield to a subsequent conveyance founded on valuable consideration, applies only where, both conveyances are made by the same person.

[6.] If the Will requires the executor to divide the negroes of the estate, into shares, and to give the shares to the legatees, and he gives a negro to a legatee without such a division, and the legatee sells the negro, the fact that the executor omitted the division, is a matter that may affect the executor as between him and the other legatees, unless they have acquiesced for a long time, in the executor's course, but it is not a matter which can affect the person who purchases the negro from the legatee.

Trover, in Houston Superior Court. Motion for new trial. Decided by Judge Lamar, at June adjourned Term, 1858.

This was an action of trover, brought by Mrs. Elizabeth A. Kearney, widow of the late Richard B. Kearney, deceased, against Benjamin T. Russell, for the recovery of a negro man slave, John.

Plaintiff claimed said slave under the last will and testament of Mrs. Sally Thrift, deceased, late of Warren county, North Carolina, the mother of her deceased husband.

The said will of Mrs. Thrift, directed that all her just debts be paid and then disposed of the balance of her estate as follows: all of her negroes to be divided into three equal parts. One of said shares to be allotted to her son Jno. T. Kearney, to be held by him during his natural life, and after his death she gives said share to his wife, should she survive

him, during her life or widowhood, and after the death of the said John T. Kearney and his wife, or after the termination of the widowhood of the wife of said John T., then she gives said share to his children equally to be divided between them. Another of said shares she gives to her son *Richard B. Kearney,* to be held by him during his life and after his death to his widow and after her death or widowhood, to his children, in the same manner as bequeathed to her son John T. above stated.

At the time this will was executed by Mrs. Thrift, she was a *feme covert,* but she made the same under and by virtue of the powers conferred upon and vested in her, by a marriage settlement executed between said Sally, then Kearney, widow of Jas. Kearney, deceased, of the county of Warren, North Carolina, of the first part, and Wm. C. Clanton, trustee, of the second part, and William Thrift, the intended husband, of the third part. Settlement entered into and executed before and in contemplation of the marriage of said Sally and William, dated 3d May, 1820, registered 12th May, 1820. The will of Mrs. Thrift bears date 20th July, 1847, and admitted to probate at August Court of the same year (1847.)

Defendant pleaded the general issue. The case was submitted to the jury who upon the evidence of both parties, argument of counsel and charge of the Court, returned a verdict in favor of the plaintiff for twelve hundred dollars damages, which may be discharged by the delivery of the negro John, sued for, within thirty days, and the further sum of four hundred and eighty dollars for hire, with costs of suit.

Whereupon defendant's counsel moved for a new trial, upon the following grounds:

1st. Because the verdict is contrary to law.

2d. Because the verdict is contrary to law and evidence.

3d. Because the verdict is against the evidence and the weight of evidence.

4th. Because the Court erred in admitting in evidence the exemplified copy of the marriage settlement between Sally Kearney, Wm. C. Clanton and William Thrift; said marriage settlement not having been recorded in this State, nor its execution proved by the subscribing witnesses: The certificate by the officer of its having been recorded there, not being sufficient to admit said settlement in evidence here.

5th. That the Court erred in allowing plaintiff to introduce said marriage settlement in evidence, after the testimony was closed on both sides and counsel for defendant was addressing the jury.

6th. That the Court refused to charge the jury as requested by defendant's counsel, "that Richard B. Kearney, the husband of plaintiff, under whom defendant holds the negro in controversy, stood in the relation of trustee for this property, and if defendant bought from him without notice, he obtained a good title, and if plaintiff does not prove notice to defendant before he purchased from plaintiff's husband, then they must find for the defendant;" but charged the contrary thereof.

7th. That the Court erred in refusing to charge as requested by defendant's counsel, "that the plaintiff, if entitled to anything, is only entitled to an estate for life or widowhood in said negro, and to enable her to recover she should prove the value of this estate or interest for her life or widowhood, and they cannot conjecture the value thereof, from the proof offered of his fee simple value."

8th. *"That the Court charged the jury as requested by the defendant's counsel in writing, that if the plaintiff has not identified by her proof the negro sued for, and that he is now in possession of defendant, or was when suit was commenced, as being one of the negroes conveyed, or the natural increase of one of the negroes conveyed, in the will and marriage settlement introduced by plaintiff, the jury must find for the defendant; and instead thereof, charging the jury that the*

*evidence in the case did prove the identity of the negro conveyed in the deed of trust and will."*

*"The Court charged the 8th request, but at the same time charged the jury that they must look to all the case and see whether or not the property was identified."*

9th. That the Court erred in refusing to charge as requested by defendant's counsel, that the will introduced by plaintiff in support of her title, is a voluntary conveyance, and if she fail to prove notice to defendant, then the jury must find for him.

10th. The same as 7th ground.

11th. That the Court erred in refusing to charge as requested by defendant, "that an innocent purchaser for valuable consideration is entitled to hold against those claiming under a voluntary conveyance." And in refusing to charge—

12th. That unless the evidence shows the negroes bequeathed by Mrs. Thrift's will, had been divided as therein directed, then plaintiff cannot recover, for the executor could not give off the negro sued for to plaintiff or her husband without such division.

The Court, after argument, refused the motion for a new trial, and counsel for defendant excepted.

WARREN & HUMPHRIES, for plaintiff in error.

WHITTLE & POWERS, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

Ought the Court below to have overruled the motion for a new trial?

That is the question.

We think not. We think, that some of the grounds of the motion, were good—To the consideration of the grounds of it, I now proceed.

The first three of the grounds, may be passed without remark.

The fourth ground was, we think, good.

[1.] The general rule is, that the production of the original writing must be required, until an excuse has been given for its non-production. No excuse was given for the non-production of the original marriage settlement. The exemplification of the record of that settlement, was admitted to the jury, on the idea probably, that the admission, was sanctioned by the act of Congres, of May the 26th, 1790, or by that of March the 27th, 1804. But in our opinion, neither of those acts extend to the case of the exemplification of the record of a private writing, such as a deed. Such a writing, after being recorded, leaves the office of record and returns to the hands of the private owner. It is still as much an original as ever, and must, therefore, be better evidence of itself, than a copy of the record of it, can be. *See Acts, Pr. Dig.*, 221.

[2] We cannot see any merit, in the fifth ground—The admission of the marriage settlement to the jury, though recurring at a late stage of the case, seems not to have prejudiced the plaintiff, at all. He did not say, that he was surprised at the introduction of the evidence, or, that he was at all less prepared to meet it, than he would have been, had it been introduced at an earlier stage of the case.

[3.] Nor is there any merit, in the sixth ground—That an estate is given to A., for life, or years, and, to B., in remainder does not make A., trustee of B., in respect to B's remainder—The fact that B., happens to be the wife of A., can make no difference. But this ground was not seriously insisted on.

[4.] There is merit, we think, in the seventh ground—Mrs. Kearney had but an interest for her life, or widowhood, in the negro. She did not represent any other interest—she was not trustee, guardian, or agent, for those entitled to the remainder. What right then had she, to recover anything more than an equivalent for the interest belonging to herself?

None that we can see, and with us, on this point, seem to be the authorities. *Mayne on Dam.*, 213, *and cases cited.*

There is difficulty in understanding the eighth ground. We rather think, however, that this, at least, is to be gathered from it—that the Court told the jury, that the evidence proved the identity of the negro involved in the suit. Such a statement to the jury, was contrary to the Act of 1850. *Cobb* 462.

[5.] There is nothing, we think, in the ninth ground. The doctrine, that a voluntary conveyance is not good against a subsequent conveyance founded on a valuable consideration, has place only where both conveyances are made by the same person. This is too obviously true, to need support.

The tenth ground is the same as the seventh.

The eleventh ground is the same as the ninth.

As to the twelfth and last ground: it is true that the will required the executor to *divide* the negroes and give to each legatee, his share of them. But, in the first place, the executor, who was examined as a witness, says, that the legatee having the first estate in the negro in question, received the negro of him, "as the executor of Sally Thrift, and under the provisions and conditions of the will;" and if this be true, then, the negro was received by the legatee after the executor had made a division such as the will required. But, secondly, if this was not enough—and it be true, that there was really no division, yet that is not a matter of which, Russell could complain, although it may be one of which the other legatees might. In such a case, the neglect of the executor, might make him liable to the other legatees for a *devastavit.* And, thirdly, even they cannot complain, if they have acquiesced in the executor's course—supposing that illegal. And, it is to be presumed, that they have—for, as far as appears, they have not complained of the manner in which this negro was turned over by the executor to Rich-

ard Kearney, and that turning over happened some ten or eleven years ago.

Moreover, Russell, himself, claims under this very act of the executor. He bought from the legatee, to whom the executor delivered the negro; and that legatee received the negro for himself, and for the remaindermen after him. He would be estopped to say, that he did not so receive the negro. And Russell, being his assignee, must stand in his shoes—especially as he had notice of the remainder estate, when he purchased.

So nothing in this ground.

Judgment affirmed.