CONVIS *v.* CITIZENS' MUTUAL FIRE-INSURANCE COMPANY
OF CALHOUN COUNTY.

FIRE INSURANCE—OWNERSHIP OF PROPERTY—LOSS—LIABILITY—
EQUITY JURISDICTION.

\* Defendant Forshey was the owner of the life estate in the
premises by a deed from her husband to her. By agreement
with the reversioners, she insured the house upon the premises,
which also constituted her homestead. She took the policy
in her name. In the application, in reply to the question,
" Are you the owner of the property ?" she answered, "Yes."
The house was destroyed by fire. Defendant insurance
company refused payment. Defendant Forshey claimed that
she was entitled to all the insurance money. Complainants
( reversioners ) filed a bill in equity to determine the rights of
the parties, and to enjoin the payment of the money to
defendant Forshey. *Held:* (1) That equity had jurisdiction
to settle the controversy; (2) that the policy was not void
because Mrs. Forshey stated she was the owner of the prop-
erty; (3) that the company was liable for the full amount of
the insurance, and not merely for the value of Mrs. Forshey's
life estate.

Appeal from Calhoun; Smith, J.  Submitted June 6,
1901.  Decided July 10, 1901.

Bill by Harriet L. Convis and others against the Citi-
zens' Mutual Fire-Insurance Company of Calhoun county,
and Delilah Forshey, to determine the rights of the several
parties under a policy of insurance.  From a decree for
complainants, defendants appeal.  Affirmed.

Complainants are the heirs of John Forshey, deceased.
The defendant Delilah Forshey is his widow.  They were
married in September, 1894, when he was 86 years old and
she was 50.  He died three months afterwards.  Mr.
Forshey, in his lifetime, carried an insurance of $2,000
upon the house and contents situated upon the land de-

---

\* Head-note by GRANT, J.

scribed in the bill, and of which he was the owner in fee. It was their homestead.  Mr. Forshey made a testamentary disposition of this land by a deed duly signed, acknowledged, and delivered in escrow to one Hopkins, to be delivered to his widow after his death.  The deed was delivered and recorded.  By its terms the land was deeded to her for life, or while she remained his widow.  Complainant William W. Forshey, for and in behalf of the others, for a valuable consideration, made an agreement with Mrs. Forshey by which she undertook and agreed to keep up the insurance on the house.  By the terms of section 8 of the by-laws of the company, "an insurance effected by the husband continues to his widow or other representative until a change of title takes place."

In November, 1895, Mrs. Forshey took out a new policy in her own name.  In her application for that policy was this question: "Are you the owner of the property?" to which she answered, "Yes."  This question was followed by this statement: "If not, state your interest."  The application was drawn up in a drug-store by an agent of the company, to whom she paid the insurance.  The application was read to, but not by, her.  Naturally, the following question was not asked her.  The only reference in the policy to the application refers to it as "No. 3,450, now in possession of said corporation, and to which, for greater certainty, reference is hereby, and may hereafter be, made as part of this policy."  The application does not make it a part of the policy, and the sole agreement in it is that the value of the property, at its cash value, is one-third more than the amount issued on the same, and the applicant agrees to pay all just assessments.

On November 13, 1897, that policy was surrendered, and another taken out, the one now in suit.  No application was made for that policy, but the policy refers to the former application, No. 3,450.  In this policy the house was insured for $1,350, the full amount that the building was entitled to.  Mrs. Forshey, under her agreement, insured the building according to its full value.  The

house and its contents were destroyed by fire March 4, 1899. The loss was inspected by the company, which was satisfied that it was an honest loss, paid Mrs. Forshey for the loss of her personal property, but refused to pay the insurance on the house. No question of overvaluation is raised, and it appears that it was the duty of the agent to examine and know the value of the property for which the policy was issued.

Mrs. Forshey claimed the insurance money, and could have instituted a suit at law to recover it. The company denied liability, but also claimed, if liable at all, it was only liable for the value of Mrs. Forshey's interest in the property as life tenant. Complainants, as remainder-men, claimed an interest in the insurance money, that Mrs. Forshey was only entitled to a life estate in it, and that the company was liable for the full amount. In this condition of affairs, complainants filed this bill to determine the rights of the parties. After this suit was at issue, the corporation made an assessment to cover the full amount of the loss, but with a stipulation that it should not affect the rights of the parties in the controversy; the object evidently being to have the money ready when the rights of the parties were determined. Decree was rendered for complainants.

*Joel C. Hopkins* and *Andrew W. Lockton*, for complainants.

*John E. Foley* (*Louis C. Miller*, of counsel), for defendant insurance company.

*O. S. Clark*, for defendant Forshey.

GRANT, J. (*after stating the facts*). 1. The defendant corporation first urges that a court of equity has no jurisdiction to determine the issues involved. Its counsel urge that no contract was made with these complainants, and that it has an absolute right to a trial in a court of law to determine the question of the validity of this insurance. This contention is without force. The complainants had

an insurable interest in the house. It was a part of the realty. They were the reversioners. It was agreed that Mrs. Forshey should insure the property for the benefit of all. Complainants, therefore, had a lien upon this insurance, and were as much entitled to maintain a suit in equity as would a mortgagee where the property was insured for the benefit of the mortgagee as well as that of the mortgagor. A part of the realty has been destroyed. Mrs. Forshey and the reversioners had the right to have the house rebuilt with the insurance money, so that their interests therein should be protected. They could not accomplish this result in any other than a court of equity; otherwise, Mrs. Forshey and the corporation could settle for a small amount, and thus deprive complainants of a large share of the value of the property. When a court of equity has jurisdiction for one purpose, it may retain jurisdiction to settle all disputes relating to the same subject-matter between the parties to the suit.

2. It is next urged that the policy is void because Mrs. Forshey falsely stated in her application that she was the owner. The claim is that "owner" means "absolute owner," or "owner in fee simple of the entire land." To this complainants first reply that no application was made when this policy was issued, and therefore there was no statement made as to ownership. We think this contention cannot prevail, and that the reference in the policy (which she accepted) to her application for the previous policy in the same company must be regarded as her application for this.

This application did not state that she was the absolute owner, or the owner in fee simple, of the land. The corporation did not ask that she should. She was the absolute owner of all the property described in the application, except the buildings. The application was not a warranty of title. In order to make an application, or any other paper referred to in the policy, a warranty, it must clearly appear that such was the intent of the parties. Warranties will not be created or extended by construction.

1 May, Ins. § 158; *Campbell* v. *Insurance Co.*, 98 Mass. 381, 391, and authorities there cited. If the term "owner" in these applications is to be construed as meaning that the applicant is the owner in fee simple of the property, unincumbered, it will be little better than a trap to catch the ignorant and the unwary. The term "owner" is comprehensive, and must be held to include in the application any insurable title or interest which the applicant has, and which entitles him to possession and use. The term is thus defined:

"One who owns; the rightful proprietor; one who has the legal or rightful title, whether he is the possessor or not; in a general sense, one who has or possesses. *When used alone, it does not necessarily imply exclusive or absolute ownership.* One who holds subject to a mortgage, or otherwise has only a qualified fee, is generally termed 'owner' if he has a right to possession." Cent. Dict.

One of the definitions of the word given by another lexicographer is, "To have the legal or rightful title to." Stand. Dict.

Where the policy provided that any other interest than an absolute fee-simple title would avoid the policy, it was held that an outstanding legal title in a surviving executor and an imperfection in the execution of the deed would not defeat the policy. *Phenix Ins. Co.* v. *Bowdre*, 67 Miss. 620 (7 South. 596, 19 Am. St. Rep. 326). The court in that case, at page 634, used the following language:

"By the insertion of those words in the conditions of its policies, can it be successfully maintained that the insurance company meant that every loss occurring under its policies, in which the assured should be unable to show a title indefeasible and good against the world,—a title free from every defect, real or seeming, and on which not the smallest cloud rested,—should be borne by the assured? To tolerate such an opinion would be equivalent to holding that the company had deliberately set a trap to ensnare the simple-minded and unwary. The contract of indemnity in multitudes of cases all over the land would prove only a delusion and a snare to the victims of premeditated cunning. We cannot believe that any honestly directed

and fair-dealing company will deliberately undertake the management of its business on such basis."

This case was approved in *Capital City Ins. Co.* v. *Caldwell*, 95 Ala. 77 (10 South. 355).

Where an insured, in his application, stated that he was the owner of the buildings to be insured, he had no legal title, and the only title he had was dependent upon a parol contract that, if he would move upon the farm, cultivate, improve it, support the family, and pay off the incumbrance, the legal title should be conveyed to him, it was held that he was the owner, within the meaning of his application. *Farmers' Mut. Fire-Ins. Co.* v. *Fogelman*, 35 Mich. 481. The equitable title in that case was held sufficient to sustain the assertion of ownership. It is not necessary that the precise interest should appear in the application, unless distinctly required. *Castner* v. *Insurance Co.*, 46 Mich. 15 (8 N. W. 554). So, where a policy provided that false swearing should forfeit all claim under it, and the plaintiff in her answer said, "I was the owner at the time it was insured," and referred to the deed, which showed that she only had a life estate, it was held that the insurance was valid. *Andes Ins. Co.* v. *Fish*, 71 Ill. 620. That case is instructive in showing how people generally use the word "owner" as descriptive of any interest or title they have in the land. There is no claim in this case of any fraud on the part of Mrs. Forshey or complainants. All acted in entire good faith. The rule approved in *Andes Ins. Co.* v. *Fish, supra*, is thus stated:

"It seems, moreover, to be settled by authority that, in the absence of fraud or mistake, and where not otherwise limited by the policy, the assured is entitled to recover, where he has an insurable interest at the time the policy is obtained, and also at the time of the loss, whether that interest is a title in fee, for life, or only merely equitable, the whole amount of damage done to the property, not exceeding the amount for which it is insured;" citing several authorities.

Where the applicant stated the property was his own,

but it was in fact mortgaged, and the equity of redemption seized upon execution, the statement of title was held sufficient to support the policy. *Strong* v. *Insurance Co.*, 10 Pick. 40 (20 Am. Dec. 507).

In *Morotock Ins. Co.* v. *Rodefer*, 92 Va. 747 (24 S. E. 393, 53 Am. St. Rep. 846), it is said:

"Applicants for insurance are not generally aware of the necessity of disclosures which long experience in the business of insurance has shown to underwriters to be necessary, or what disclosures it is important to make; while insurance companies can not only protect themselves by making inquiries in regard to such things as they may regard to be material, but, as is well known, are in the habit of doing so."

The case of *Allen* v. *Insurance Co.*, 5 Gray, 384, is exactly in point. In answer to the following question, "Do you own the land on which the buildings stand?" she said, "Yes." In fact, she only had a life estate under the will of her husband. The policy was held valid.

In 13 Am. & Eng. Enc. Law (2d Ed.), 230, it is stated that the expression that an insured is owner of the property, or that it is his, "is the earliest and crudest form of statement. Where no questions which require a more precise disclosure are asked, almost any insurable interest will be covered by those words."

Mrs. Forshey was evidently not accustomed to business, or to applying for insurance. The application was filled out by the agent of the defendant company at the very place where she resided, and where the property was. He knew that Mr. Forshey, in his lifetime, owned this property, that it was her homestead, and that she had remained in possession since her husband's death. They had continued the insurance for some time after his death, without change. An inquiry from the agent would have undoubtedly disclosed the actual state of the title, and have avoided this controversy. She used the term "owner" as hundreds of people will who own the same or similar interest in land. It is a natural expression for such persons to use. Those applications are usually made

by those unfamiliar with legal terms. They understand and use words in their popular sense. If this company desired more full particulars about the title, it could easily have framed its questions so as to accomplish the result. Mrs. Forshey had an insurable interest, and the policy must be held valid.

3. It is next urged by the defendant corporation that the company is responsible only for the value of her life estate in the building destroyed. This would virtually destroy the use of her life estate, for she could not replace the building for the present value of her interest in money based upon the value of that estate. The company insured this property knowing that the land of which it was a part, and the principal part in value, was her homestead; that she was entitled to its use; that it would be of little value to her without the house; and that she would be entitled to the full amount of the insurance, to enable her to rebuild, so that she might enjoy and use the property. The insurer has not been deceived. It understood that it was insuring for the full value, and intended to do so. Its defense is technical, and without merit. *Andes Ins. Co.* v. *Fish, supra.*

4. The only remaining question is one between Mrs. Forshey and these complainants. She denies making the contract to keep the property insured. We have no doubt that she did make the agreement. Complainant William, representing the other complainants, desired to have it insured. He asked to see the policy, and she produced it. She admits that she talked with William about it, and that she told him she intended to keep it insured, but for her interest alone. The house constituted the principal value of the entire property. It is not reasonable to even suppose that she, knowing that she was entitled only to the use for life, intended to appropriate the interest of the reversioners by insurance to the full amount. Resting upon this agreement, he took no steps to obtain other insurance. This being so, it follows that this money must either be used in rebuilding, or invested so that she shall receive the income therefrom.

The bill prayed that the money be used to rebuild the dwelling-house; that the money be paid into court, to be thus expended upon the order of a trustee to be appointed by the court.    The court decreed that the money be paid into court, less the costs of the court below, to be retained by the register until the further order of the court; and that any interest or income derived therefrom shall be paid over to Mrs. Forshey so long as she shall remain a widow. The decree is affirmed, with costs of this court against the defendant company.

The other Justices concurred.