*In re* CAMERON'S ESTATE.

APPEAL OF SMITH.

1. GUARDIAN AND WARD—DE FACTO GUARDIAN.
   A guardian *de facto* is subject to all the duties and liabilities of a duly appointed guardian.

2. SAME—LANDLORD AND TENANT.
   Where real estate is controlled and cultivated by a *de facto* guardian, it should be treated as a trust estate, since hardship might be worked by treating the guardian as a lessee.

3. SAME—LIFE TENANT—REAL PROPERTY—INSURANCE—DUTY TO REMAINDERMAN.
   Funds received from insurance taken in the guardian's name, on a barn of which the title was held by the ward as a life tenant, are properly invested in reconstructing the building, and should be charged to the estate, on the theory that an equitable apportionment of the fund between the life estate and remainder was made by the disbursement.

4. SAME—FINAL ACCOUNT—IMPROVEMENTS TO FARM PROPERTY.
   The expense of improvements to real estate, shown to be necessary to good farming and to the enjoyment of the life estate, and to have improved the property materially, should be credited to the guardian on a final accounting.

5. SAME—EXPENSES AND DISBURSEMENTS.
   Reasonable expenditures for cultivating the farm should be credited to the guardian.

6. SAME—HOUSEHOLD EXPENSES.
   Twenty dollars per year, used in purchasing household necessities, is a proper and reasonable charge by a guardian who furnishes personal care and a home for the ward.

7. SAME.
   Labor of the husband of the guardian in cultivating the farm is properly charged to the estate.

8. SAME—NURSING AND PERSONAL CARE.
   A reasonable charge for attending, nursing, and caring for the ward should be charged to the estate.

9. SAME—CHARGES TO GUARDIAN'S ACCOUNT.
   Where children of the guardian lived on the farm, their board should be credited to the estate.

Error to Newaygo; Palmer, J. Submitted May 3, 1909. (Docket No. 65.) Decided September 21, 1909.

Susie Smith presented an account as guardian of Hiram Cameron, an incompetent. The account was disallowed in the probate court, and she appealed to the circuit court. A judgment dismissing the appeal is reviewed on writ of error. Reversed, and judgment ordered to be entered in circuit court.

*Turner & Turner* (*Cross, Lovelace & Ross*, of counsel), for appellant.

*George Luton* (*Albert G. Day*, of counsel), for appellee.

McALVAY, J. In an opinion handed down (*In re Cameron's Estate*, 157 Mich. 398 [122 N. W. 278]) will be found a statement showing the facts relative to this controversy. The appellant, as is held in that opinion, was guardian *de facto* of Hiram Cameron, and he had the undoubted right to have an accounting of her administration. This case is concerned only with that accounting. Such accounting was had in the probate court, and an appeal was taken by the acting guardian from the order made thereon to the circuit court, where the small balance of the account in her favor as found by the probate court was disallowed, and the appeal dismissed. From this order and judgment the case is brought to this court upon a writ of error by the acting guardian. In the case above referred to the order of the probate and circuit court revoking and canceling the appointment of the guardian left the matter of the accounting to be determined upon the record in this case. The findings and judgment of the circuit court must be considered as an allowance of the account as restated and allowed by the probate court, except as to the balance of $24.50 there found to be due the appellant. Therefore, in discussing the errors which are assigned, we will consider the original account and

the restatement of the probate court as the basis for the judgment appealed from.

This appellant has already been held by this court to have been *de facto* guardian of this estate. This *de facto* guardian will be held subject to all the duties and liabilities of a guardian. There is no dispute that this is the law governing the acts of such guardians. 15 Am. & Eng. Enc. Law (2d Ed.), p. 123:

The theory of considering this guardian a lessee from year to year, acted upon by the probate court in stating and passing upon her final account, and which the court below adopted, was one not applicable to this case, and one which might work hardship to either or both parties. The rule is that the rights of a *de facto* guardian will be recognized so far as to entitle him to an equitable credit for expenditures which were made for the ward, and which would have been allowed had the guardian been a legal one. 15 Am. & Eng. Enc. Law, *supra.*

It does not appear that appellant in this case did not undertake the guardianship in good faith. The irregularities which made her appointment invalid doubtless were not of her making. She was not a guardian without any color of right. Nevertheless she must be held to a strict accounting of all her acts and doings relative to this estate. She will be charged with all of the property which came into her hands, all receipts from all sources during the period covered by the accounting, and be given credit for property on hand and for all lawful disbursements. The guardian's account is itemized, showing all receipts and all disbursements, and also showing all personal property on hand. As to this part of her accounts, and of their accuracy, there is no dispute.

Immediately after her supposed appointment, she moved with her family upon the farm occupied by her ward, and took possession of the personal property, of which an inventory was taken. The ward was a tenant for life of the real estate. The barn situated on this land was destroyed by fire caused by lightning. There was insurance

in the name of the guardian on the building and on the contents, consisting of hay, grain, and other personal property. The loss was adjusted and paid, $400 total loss on barn and $407.46 loss on contents, consisting of 58 tons of hay, 200 bushels of oats, and 87 bushels of wheat. The amount of this insurance has been charged by the guardian against herself as cash received.

Complaint is made that the court was in error in the disposition made of this insurance item. It was error upon the theory of a leasing, for in that case the hay, grain, and produce belonged to the lessee, and she would be personally entitled to the insurance recovered upon her property destroyed. And upon any other theory we think there was error in the disposition of this item. It was correctly credited to the estate, but the court refused to charge against the estate the amount expended by the guardian in building a new barn with this money, on the ground that it went to the benefit of the inheritance. It is included in a long schedule of items amounting altogether to the sum of $1,012.08, all of which were disallowed upon the same ground. The argument is made in this court on behalf of the ward that the entire insurance belonged to the life tenant, and, although he has not appealed, it is asserted that the court was in error in holding otherwise. This is a dispute between the *de facto* guardian and the ward. The company paid the insurance promptly. The barn was a total loss and insured for more than the interest of the life tenant. The authorities are not harmonious upon the question here involved. They agree that, where no requirement is contained in the instrument creating the life estate, the life tenant is not bound to insure the interest of remaindermen—also, that either party may insure for his own benefit. 16 Cyc. p. 632. A line of authorities holds that neither life tenant nor remainderman has any claims upon the proceeds of the policy of the other; that the contract of insurance is a personal contract of indemnity against loss, and the sum paid is in no proper or just sense the proceeds of the prop-

erty. *Harrison* v. *Pepper*, 166 Mass. 289 (44 N. E. 222, 33 L. R. A. 239, 55 Am. St. Rep. 404), and cases cited. A well-considered case taking a contrary view of the question is *Green* v. *Green*, 50 S. C. 514, 532, *et seq.* (27 S. E. 959, 46 L. R. A. 525, 62 Am. St. Rep. 851–854), which holds that a trust arises in favor of remaindermen where the life tenant recovers the value of buildings destroyed by fire. The court said:

"We therefore think that sound public policy requires that any money collected by a life tenant on a total loss by fire should be used in rebuilding or should go to the remainderman, reserving the interest for life for the life tenant."

See 8 Ballard on Real Property, § 386, and cases cited. See, also, *Hopkins* v. *Keazer*, 89 Me. 347 (36 Atl. 615). In the case at bar the *de facto* guardian was one of the remaindermen, and from the record it may be inferred that she intended to provide protection for them. The *de facto* guardian in this case must be considered as trustee for the life tenant in taking this insurance as such guardian. She received from the insurance company and held the full value of the barn in her hands, and put it to a lawful and necessary use. It would certainly be inequitable to give this money to the ward, and much more inequitable to charge it to the *de facto* guardian, who in good faith has used it in the interest of both the ward and remaindermen, having made an equitable apportionment of the fund by her action. In equity this credit should have been allowed to her. See *Convis* v. *Insurance Co.*, 127 Mich. 616 (86 N. W. 994).

The other items in this schedule for which she was disallowed credit were for building fences, hoghouses, corncrib, and digging wells, for lumber, brick, cement, and labor used and employed in constructing the same, and for some general repairs. The record shows that, when the guardian was appointed and entered upon her supposed duties, this farm was run down. There were no wells, and it was necessary to carry drinking water two

miles. There were no fences, and no proper places to keep and care for the stock and produce. About $100 per year has been expended for these purposes, which, in connection with good husbandry, has increased the value of the farm in an amount from $1,500 to $3,000 and the rental value $100 a year. This increased value has directly benefited the ward, and will continue to benefit him during the remainder of his life expectancy of 31 years. The record also shows that these expenditures were absolutely essential and necessary to the enjoyment of the life tenancy. It was good business judgment on the part of the guardian who acted in good faith, and she should have been allowed these disbursements. The court was in error in disallowing them.

An itemized schedule amounting to $494.19 was disallowed by the court under the theory of a leasing, because they pertained to the cultivating and carrying on the farm and included items of family expense. The farming was carried on for the benefit of the ward. It was his source of income. It is certain that the record shows that the farming was conducted in a profitable manner. We are to determine whether these items should be credited to the guardian. In so far as they pertain to cultivating the land and carrying on the farming, they are proper charges, and amount to $375. The household expenses charged were not heavy, and amounted to $20 per year, showing that but little was required outside of the products of the farm. This amount was not unreasonable to expend for this purpose, and was for flour, meat, and other necessaries. They should have been allowed.

There were some items outside of the general receipts and disbursements in this account which were not allowed. These consist of (1) a charge for services of Leon Smith, husband of the acting guardian, employed by her in working upon and managing the farm for 72 months at $30 per month; (2) an item charged for her personal services as guardian and for nursing and caring for the ward for 62 months at $10 a month. The first item was disallowed

and stricken out and the leasing theory substituted. There is no dispute concerning these services or the value of them. It is not shown that like services could have been procured for less money. Mr. Smith used his own heavy team to do the heavy work, and no charge is made for its use. These services were necessary to the proper working of the land. The item was a necessary expense and should have been allowed. The acting guardian should be allowed reasonable compensation for care of the ward, who was her brother. He was quite deficient physically, being deaf and nearly dumb. He was given to the use of intoxicants, and was frequently sick. She attended to his wants during these years, and the record shows that she did it well and with patience and tenderness. Her charge of only $10 a month is reasonable, and it is allowed.

It is claimed that the board of the children of the Smiths should be considered in adjusting the charge of Mr. Smith for his services. The husband, acting as hired man, and the wife, devoting her time to her brother and the household duties, were each entitled to board and lodging. The children cannot be so considered. From the evidence we determine that on the average two of the children lived on this farm during the six years. A fair charge for board and lodging would be at the rate of $150 per year each for two children for the entire time, which would amount to $1,800. From this should be deducted $100 a year for produce brought to the farm by Mr. Smith and used in support of the family and the ward. This would leave $1,200 to be deducted from the item of Mr. Smith for labor and services. None of the other items of this account are disputed.

The final account presented will be stated and allowed in accordance with the foregoing opinion, which, if footings are correct, will leave a balance to the credit of the *de facto* guardian of $1,365.65. The personal property on hand at the time of the account rendered, amounting to $1,434.34, showing an increase of $1,124.47 over the

amount received, belongs to the ward, and, if not already delivered to him, is held by Mrs. Smith subject to his order, or the order of the representative of the ward duly appointed by a court of competent jurisdiction, and on the order of such court.

The judgment of the circuit court is reversed, and the cause will be remanded to the circuit court, where a judgment will be entered in due form, in accordance with this opinion, in favor of the appellant for the amount above stated and against the petitioner and ward, Hiram Cameron, and a certified copy of such judgment will be transmitted to the probate court of Newaygo county, Mich., and appellant will recover costs of the circuit and Supreme courts, to be paid out of the estate.

MONTGOMERY, OSTRANDER, HOOKER, and BROOKE, JJ., concurred.