## CLARK, guardian, *v.* LEVERETT, guardian, *et al.*

1. Where a life-tenant is guardian for a remainderman, and takes out insurance in his own name on a dwelling on premises owned by him for life and the remainderman in fee after the expiration of his life, the life-tenant paying the premium with his own funds, and, upon the destruction of such dwelling by fire, collects the full insurance, which is equal to the value of both the life and remainder estates, the proceeds of such insurance stand in the place of the property destroyed, and should be used in rebuilding the dwelling, or should be held by the life-tenant for the benefit of the remainderman upon the life-tenant's death, in which case the life-tenant would be entitled to the interest on the fund during his life.

2. In view of the above ruling, the petition set forth a cause of action, entitling the plaintiff to the relief sought; and the court below erred in dismissing it upon demurrer.

No. 4329. December 16, 1924. Rehearing denied January 23, 1925.

Equitable petition. Before Judge Roop. Meriwether superior court. March 31, 1924.

An equitable petition was filed by L. C. Clark against H. B. Leverett and W. B. Butts, which as amended alleges, in substance, that plaintiff was appointed by the ordinary of Meriwether County as guardian for Joycie Ruth Butts, a minor, and qualified on January 31, 1922; that H. B. Leverett had previously been the guardian of the minor named, but his letters of guardianship had been revoked; that the bond of Leverett for $20,000, conditioned upon the faithful performance of his duties as guardian, was signed by W. B. Butts as security; that Mrs. Joycie Leverett, wife of H. B. Leverett, had by her will bequeathed to H. B. Leverett an estate for life in a certain house and lot together with the furnishings of the house, with remainder to Joycie Ruth Butts; that Leverett went into possession of said property as life-tenant under said will; that while acting as guardian and executor of the will of Mrs. Leverett,

H. B. Leverett insured the house and furniture mentioned for an aggregate of $4500; that H. B. Leverett was named as the assured in the policy; that the property insured was subsequently destroyed by fire; that the sum of $4349.15 was collected by Leverett under said policy of insurance; that he asserts that this fund belongs to him individually and that the minor named has no interest whatever in the same; that he fails to account for the same or to secure the same that it may be forthcoming at his death for the benefit of the remainderman; that he is entitled to deduct from the amount collected the amount paid by him as premium upon the insurance; that at the time of the collection of the money under said policy H. B. Leverett and W. B. Butts were engaged in business under the firm name of H. B. Leverett & Company; that said fund was used to pay indebtedness of said firm and in purchasing new stock; that W. B. Butts knew the money so used by said firm was the money collected by Leverett under said policy of insurance; that Leverett, being old and feeble in body and mind, is being unduly influenced, dominated, and controlled by W. B. Butts; that Butts manipulated and managed the obtaining of said insurance with the purpose and object of getting the benefit of the same for himself and converting it to use in his own behalf; that there was collusion between the defendants to get and receive the benefit from said insurance; that since the burning of the property W. B. Butts, in order to defraud and hinder and delay plaintiff and his other creditors, conveyed large quantities of real estate and personal property to his wife; that W. B. Butts has removed from the land mentioned the bricks and stones used as pillars and chimneys, thereby committing waste upon the property of petitioner's ward; that both defendants are insolvent, having disposed of the mercantile business mentioned; that considering the amount of the bond the security is insufficient; that both defendants, composing the firm of H. B. Leverett & Co., are jointly and severally liable and bound to account to petitioner for the amount collected under said insurance policy. The prayers are (a) that Leverett, as guardian, be required to account to petitioner, as guardian, for the amount collected under said policy of insurance, after deducting the amount paid as premium, and to give bond with security for the preservation and forthcoming of the same at the death of himself as life tenant; (b) that Butts, security for Leverett, guardian,

be equally bound to account for said sum; (c) that upon failure of the defendants to account for and secure said sum, judgment be rendered against them jointly and severally; (d) for general relief; (e) that upon failure of Leverett to comply with the prayers, he be required to pay said fund over to a trustee to be named by the court; and that upon his failure to do this, Butts be required to pay the same to a trustee; that the trustee be required to use said fund as directed by the court and pay the interest from the same over to Leverett during his life.

The defendants demurred generally to the petition, upon the grounds: (1) the same fails to set forth a cause of action; (2) there is a misjoinder of parties, because the facts alleged are insufficient to show that W. B. Butts should be made a party, or that any property has come into the hands of Leverett as guardian which should be accounted for by said Leverett as guardian to the ward or to the plaintiff at the time of commencement of the suit; (3) the petition is multifarious because it sets out separate and distinct causes of action, in that it seeks to sue Leverett as principal in the breach of a guardian's bond and Butts as security on said bond, and also to sue Leverett and Butts severally and jointly and equally as members of the firm of Leverett & Co., for trust funds used by the said Leverett in the aforesaid partnership; (4) that the suit is prematurely brought, because the petition shows on its face that the life-tenant under the will of Mrs. Leverett is entitled to the custody, control, use, benefits, and profits arising from the insurance collected by H. B. Leverett for and during his natural life, and he is not bound to account to any person for the same; also that no money arising from said insurance has ever come into his hands as guardian for said minor, and there is nothing in his hands for which he should account as such guardian; (5) that the petition is without equity, and plaintiff has a complete and adequate remedy at law, which should arise in the court of ordinary if said bond is not sufficient as alleged. There are several grounds of special demurrer. The court sustained the general demurrer and dismissed the petition, and error was assigned upon that judgment.

*Jones & Jones* and *N. F. Culpepper,* for plaintiff.

*J. F. Hatchett* and *H. H. Revill,* for defendants.

HINES, J. 1. Where a policy of insurance, to the full value of the property, is taken out by the life-tenant for his own use,

and the premises are destroyed by fire, and the full insurance is collected by him, the authorities on the question of the rights of the remaindermen in the proceeds of the insurance money are in conflict. Different rules have been adopted by different courts. We may designate them as the Massachusetts, Rhode Island, and South Carolina rules. The Massachusetts rule is as follows: "A life-tenant is not required to use the proceeds of insurance obtained by him on a total loss of buildings insured in his own interest, in rebuilding on the premises, and can not be held accountable to the remaindermen for such money, even if it amounts to more than the value of the life-tenant's interest," and is equal to the whole value of the property destroyed. Harrison *v.* Pepper, 166 Mass. 288 (44 N. E. 222, 55 Am. St. R. 404, 33 L. R. A. 239). The Rhode Island rule is this: If the policy covers merely the life-tenant's interest, he is entitled to the insurance in full; but if the policy is issued to him for the full value of the fee and this amount is recovered by him, he is a trustee for the remainderman as to the excess of the amount received over the value of his life-interest. Sampson *v.* Grogan, 21 R. I. 174 (42 Atl. 712, 44 L. R. A. 711). The South Carolina doctrine is this: Moneys collected by a life-tenant upon a policy of fire insurance upon a building subject to the tenancy, though the premium has been paid with the personal funds of the life-tenant, stand in place of the property destroyed, and should therefore be used in rebuilding it, or should be held by the life-tenant for the benefit of the remainderman after such tenant's death, in which case the life-tenant would be entitled to the interest on the fund during his life. Green *v.* Green, 50 S. C. 514 (27 S. E. 952, 62 Am. St. R. 846).

The question involved in this case has never been passed upon by this court; and we are now required to lay down the true rule applicable under the facts of this case. We are now free to establish in this State such rule. The Massachusetts doctrine is based upon two propositions. One is that, in the absence of anything that requires it in the instrument creating the estate, or of an agreement to that effect on the part of the life-tenant, the life-tenant is not bound to keep the premises insured for the benefit of the remainderman; that each can insure his own interest; but in the absence of any agreement neither has any claim upon the proceeds of the other's policy. The other proposition is, that the contract

of insurance is a personal one, and inures only to the benefit of the party by whom it is made and by whom the premiums are paid. The reasoning upon which the Massachusetts rule is bottomed is not convincing and controlling. We can not agree to the proposition that in all cases the life-tenant is not bound to keep the premises insured for the benefit of the remainderman. While the tenant for life is entitled to the full use and enjoyment of the property, he is required by our law to exercise in such case "the ordinary care of a prudent man for its preservation and protection." Civil Code (1910), § 3666. If the exercise of ordinary care requires him to insure, his failure to do so would render him liable to the remainderman at least for damages. Loss resulting from such negligence would amount to waste. If such waste was both permissive and voluntary, and was committed in a manner evidencing an utter disregard of the rights of the remainderman, the life-tenant would forfeit his estate. *Parker* v. *Chambliss*, 12 *Ga.* 235; *Roby* v. *Newton*, 121 *Ga.* 679 (49 S. E. 694, 68 L. R. A. 601); *Brown* v. *Martin*, 137 *Ga.* 338, 341 (73 S. E. 495, 39 L. R. A. (N. S.) 16); *Grimm* v. *Grimm*, 153 *Ga.* 655 (113 S. E. 91). The fact that the life-tenant, acting in his own behalf, insured this property for his own benefit would indicate that he thought it prudent to insure, and is persuasive proof that "the ordinary care of a prudent man for the preservation and protection" of this property required him to insure it for the benefit of the remainderman as well as himself. But it must be borne in mind that we are not dealing in this case with the neglect of the life-tenant to insure, but with the disposition of the proceeds of the insurance when he did insure for the full value of the property, and upon loss of the property received funds sufficient to cover the full value of the property.

Nor do we think that the second proposition is a sound one in all cases. If an agent insures the property of his principal in his own name, the latter would be entitled to the insurance money. Graham v. Fire Insurance Co., 48 S. C. 195 (26 S. E. 323, 59 Am. St. R. 707). If a trustee insures in his own name property of his cestui que trust, the latter would be entitled to the proceeds of the insurance. If a carrier insures the goods of a shipper in his own name and the same are destroyed, the shipper would be entitled to the proceeds of the insurance. So if a guardian insures the

property of his ward in his own name, in case of its loss by fire the ward would be entitled to the insurance money.

Both the Rhode Island and South Carolina doctrines are closely akin. Both rest upon the foundation that the relation between the life-tenant and the remainderman is one of trust or quasi-trust. Does such relation exist between them in this State? We have already seen that it is the duty of the life-tenant to exercise ordinary care in the protection and preservation of the remainder estate. Whoever is charged with the duty of protecting and preserving property for the use of another occupies a relation of trust to the latter. It is not necessary that the relationship should be that of an express trust. It may be only that of a quasi-trust. "Because of this duty to preserve and protect the estate in remainder, his relation to the remainderman is to a certain extent a fiduciary one, and has frequently been termed an implied or quasi-trusteeship." 17 R. C. L. 625, § 15. The power of a court of equity to enjoin the life-tenant from committing waste is based upon the principle that the tenant is considered in the nature of a trustee for those in remainder. Smith *v.* Daniel, 2 McC. Ch. (S. C.), 143 (16 Am. D. 641). It is true that the life-tenant is a trustee only in the sense that a duty rests on him as life-tenant to have merely due regard for the remainderman, a duty giving him the character rather of a quasi-trustee. Hardy *v.* Mayhew, 158 Cal. 95 (110 Pac. 113, 139 Am. St. R. 73). The above provision from Ruling Case Law was quoted with approval by the Chief Justice who delivered the opinion in *Barmore* v. *Gilbert,* 151 *Ga.* 260 (106 S. E. 269, 14 A. L. R. 1060) ; and the principle that the life-tenant is a quasi-trustee for the remainderman in protecting and preserving the remainderman's interest was expressly stated. Upon due analysis nothing to the contrary of this was held by this court in *Russell* v. *Kearney,* 27 *Ga.* 96. It is true that in the third headnote in that case it was said: "That an estate is given to A. for life, or years, and to B. in remainder, does not make A. the trustee of B. as to B.'s remainder." In that case the court was dealing with the question whether the life-tenant bore the relation of an express trustee to the remainderman, and not with the question whether the relationship was one of quasi-trustee. In that case a slave was bequeathed by testatrix to her son, Richard B. Kearney, to be held by him during his life and after his death to go to his widow.

Kearney during his lifetime sold this slave to the defendant, Russell. After the death of Kearney, the widow brought trover against Russell to recover this slave. The trial judge was requested to charge that the husband stood in the relation of trustee for this property, and that, if the defendant bought from him without notice, he obtained a good title against the remainderman. The trial judge declined to so charge. This court affirmed his ruling. This was not a holding that the life-tenant occupies no fiduciary relation to the remainderman, but that, under the will in which the testatrix devised this slave to her son for life, and at his death to his widow, no such office of trustee existed in the husband that would authorize him to sell the property in which he had a life-estate. This court did not hold in that case that the life-tenant does not occupy a fiduciary relation to the remainderman. It only held that such relationship was not one of express trust. So that case is not authority for the proposition that such relation is not one of implied trust. So we are of the opinion that the naked relation of life-tenant and remainderman makes the former an implied or quasi-trustee for the preservation and protection of the interest of the remainderman; and that under our law the life-tenant must exercise ordinary care and prudence in protecting and preserving the property of the remainderman. Whether the life-tenant exercises such ordinary care and prudence is generally a question of fact for determination by a jury; and it can not be said as a matter of law that the duty to insure does not rest upon the life-tenant.

But in this case we are not dealing with the naked relation of life-tenant and remainderman. Here the life-tenant was guardian for the remainderman. The relation of life-tenant to the remainderman is one of express trust, and as to the property of the ward the guardian is the trustee. 28 C. J. 1123, § 204. A guardian is bound to use the same care and management that a prudent man would exercise in the protection of his own property. This is the rule applicable to all persons acting in a fiduciary character. If ordinary care and prudence requires the guardian to insure the property of his ward, and he should fail to do so, he would be liable to his ward for any damages sustained by such neglect. If this case involved the liability of the guardian for neglect to insure the property of the ward, it might be a question of fact, to be

determined by a jury, whether he was lacking in ordinary care and prudence in not insuring the property of the ward. It has been said that "It is the duty of a guardian to keep his ward's property insured, and he is entitled to be credited with all proper disbursements therefor." 28 C. J. 1151, § 257. To support this text the cases of Means *v.* Earls, 15 Ill. App. 273; Sims *v.* Billington, 50 La. Ann. 968 (24 So. 637); Mahony *v.* Mahony, 41 La. Ann. 135 (5 So. 645), are cited. The case first cited is not authority for the proposition that it is the duty of a guardian to keep his ward's property insured. The remaining cases cited are authority for the proposition that he is entitled to be credited for all proper disbursements for insurance on the property of his ward. We think that the duty of the guardian to insure the property of his ward depends upon the question whether ordinary care and prudence, under all the circumstances, requires him to insure. If such duty rested upon him under the rule that he must exercise ordinary care and prudence, he would be liable for his neglect to discharge it. If it did not, he would not be liable. The fact that the guardian can not borrow money and bind his ward therefor, and that he can not, by any contract other than those specially allowed by law, bind his ward's property, or create a lien thereon (Civil Code (1910), § 3074), would not relieve him from the duty of insuring the ward's property, if ordinary care and prudence required its insurance, if he had funds with which to effect such insurance. Lack of funds might excuse him for neglect to insure. But the question of the liability of the guardian to his ward for neglect to insure the property of the latter is not involved in this case. The guardian did not neglect to insure the property. He insured the property to its full value; and he received the full insurance, which covered the value of both interests. The question before us is whether, having so insured the property, the guardian is liable to the ward for so much of the insurance money as will cover the value of the ward's interest.

It must be borne in mind that the Massachusetts rule was announced by the Supreme Court of that State in a case involving the naked relationship of life-tenant and remainderman, and in which the life-tenant bore no express trust relation to the remainderman. Even in such a case we do not think the Massachusetts doctrine sound. We are dealing, however, with a case where the life-tenant

was guardian for the remainderman. Under these circumstances, where either the life-tenant or the remainderman insures property for its full value and collects the full insurance, the insurance money should stand in the place of the property destroyed, and should be used to restore the building destroyed, or be held by the life-tenant for the remainderman after the death of the life-tenant, the latter being entitled to the use of the fund during his life. The fact that the full premium was paid, and the policy issued for the full value of the fee, may fairly be taken to indicate the real intent of the life-tenant to insure the whole property, not only for his own benefit, but also for the benefit of others interested in the property. When the insurance was taken out by the life-tenant under such circumstances, it may be concluded that he took it out for his own benefit and that of the remainderman; and when the remainderman under such circumstances takes out the insurance, it may fairly be inferred that he insured the property for his own benefit and that of the life-tenant. Welsh *v.* London &c. Corp., 151 Pa. St. 607, 618 (25 Atl. 142, 31 Am. St. R. 786); Smith *v.* Cameron, 158 Mich. 174 (122 N. W. 564).

In Green *v.* Green, supra, which was a case in which the relation of the life-tenant to the remainderman was unaffected by any express trust, the Supreme Court of South Carolina well said: "We, therefore, think that a sound public policy requires that any money collected by a life-tenant on a total loss by fire should be used in rebuilding or should go to the remainderman, reserving the interest for life for the life-tenant." If that case is sound, where the relation between the parties is unaffected by any express trust, how much stronger is the case where the relation between the life-tenant and remainderman is that of guardian and ward. Here the trust is express. To permit the guardian, who is the life-tenant, to insure the premises for their full value and collect the full insurance, and appropriate all of it to his own use would not only violate public policy in this respect, but would violate the familiar principle that a guardian can not make any profit for himself out of his dealings with his ward's estate and that he must pay all such profits to his ward. *Mayor &c. of Macon* v. *Huff,* 60 *Ga.* 221; *Dowling* v. *Feeley,* 72 *Ga.* 557. After a thorough search, we have been unable to find any case which is on all-fours with the one under consideration. The nearest approach to the case

at bar is that of Smith *v.* Cameron, supra.   In that case a remainderman, who was a de facto guardian for an incompetent life-tenant, insured premises for more than the interest of the life-tenant, and upon loss collected the full amount and expended it in rebuilding the barn, in the interest of both the ward and the remainderman. It was undertaken to hold the guardian responsible to the ward for the full insurance, on the ground that the property was insured for the benefit of the ward alone, and that the remainderman had no interest in the proceeds of the insurance.   The Supreme Court of Michigan held that the guardian should be credited with the insurance money expended in restoring the burned premises. This ruling was based upon the decision in Green *v.* Green, supra. In the Michigan case the remainderman was guardian, and insured the property as such.   The Michigan Supreme Court held that it fell within the South Carolina case; and that, where the remainderman was guardian for the life-tenant, and insured the property for his ward, the insurance was for the benefit of both life-tenant and remainderman.   So while the facts in the two cases are not the same, the ruling rests upon the same theory.   The Michigan case rules the converse of the South Carolina case; but what is sauce for the goose should be sauce for the gander.

So we are of the opinion that where a guardian, who owns a life-estate in property, his ward owning the remainder estate therein, insures the whole property, both his life-interest and the remainder interest, for their full value, and upon the loss of the property by fire receives the value of both interests in full, he should hold the money received for the use and benefit of such ward; and he should be required either to restore the building, or to hold the fund for the benefit of the life-tenant at his death, he being entitled to the interest thereon during his life.   Having insured both his own and the ward's interests in full, and having received funds sufficient to cover the loss of both, there can be no possible reason, in equity and good conscience, why he should not account to the ward for the value of his interest in the property.

2.   In view of the above ruling, the petition stated a cause of action entitling the plaintiff to the relief sought, and the court below erred in dismissing the same on demurrer.

        *Judgment reversed.   All the Justices concur, except*
Russell, C. J., and Gilbert, J., dissenting.   1.   So far as we

are aware, the authorities generally agree that, unless the instrument creating the estate so requires, or there is an agreement between the interested parties obligating him to do so, the life-tenant is not bound to insure the premises for the benefit of the remainderman, and either may insure for his own benefit. It is also generally agreed that if the insurance is taken out by the owners of the fee prior to the creation of the life-estate and the premises are destroyed by fire, the life-tenant is only entitled to his pro rata share of the proceeds. 17 Ruling Case Law, 642, § 32; 21 C. J. 954, § 92. A collection of authorities will be found cited in the footnotes of these publications. Where a policy of insurance is taken out by the life-tenant for his own benefit subsequently to the vesting of the estate, and the premises are destroyed by fire, the rule adopted in other States on the question of who is entitled to the proceeds is not uniform. Three rules have been declared and are stated in Corpus Juris and Ruling Case Law, with citations, as follows: 1. If the tenant takes out insurance for his own benefit, in case of destruction by fire the remainderman has no interest whatever in the proceeds of the policy and can not compel the life-tenant to place the same in trust so as to be turned over to the remainderman after the termination of the estate, even though the moneys received from the policy of insurance are equal to the whole value of the property destroyed. 2. Another rule is that if the policy covers merely the life-tenant's interest, he is entitled to the insurance in full; but if the policy is issued to him for the full value of the fee and this amount is recovered by him, he is a trustee for the remainderman as to the excess of the amount received over the value of his life interest. 3. The third rule is, that, because the relation of a life-tenant to the remainderman is that of a trustee, any insurance effected by the tenant is also for the benefit of the remainderman, and any money collected by him from a total loss by fire should be used in rebuilding or should go to the remainderman, reserving the interest for life to the life-tenant and crediting him with the premium paid on the policy. Supporting the rule first stated above is the leading case of Harrison v. Pepper, 166 Mass. 288 (44 N. E. 222, 55 Am. St. R. 404, 33 L. R. A. 239). It may also be stated that this rule is supported by the weight of authority. The second rule is supported by the case of Sampson v. Grogan, 21 R. I. 174 (42 Atl. 712, 44 L. R. A. 711). This is a

32

well-considered and strongly argued case, but it stands alone in so far as we have been able to ascertain. The third rule is supported by the case of Green v. Green, 50 S. C. 514 (27 S. E. 954, 62 Am. St. R. 846), also well considered and ably argued. In the cases entertaining the view that the proceeds of the insurance recovered by the life-tenant are held in any manner or proportion for the benefit of the remainderman, the conclusion is reached on the theory that the life-tenant is a trustee or quasi trustee in the transaction for the remainderman. It does not appear in the case before us that there was any agreement binding the life-tenant to insure the premises for the benefit of the remainderman, nor is there a suggestion that he did so or intended to do so. The case is being considered on demurrer to the petition. It is not alleged that the life-tenant insured the property for the benefit of the remainderman, and of course the petition must be considered most strongly against the pleader. We are considering the case, therefore, on the basis that the life-tenant insured the premises solely for his own benefit. The will creating the estate imposes no duty upon the life-tenant to insure the premises for the benefit of the remainderman, in so far as the petition discloses. There is no statute in this State imposing such a duty, nor is there any statute making the life-tenant a trustee of the remainderman. The duty placed upon the life-tenant, under our law, is as follows: "The tenant for life is entitled to the full-use and enjoyment of the property, so that in such use he exercises the ordinary care of a prudent man for its preservation and protection, and commits no acts tending to the permanent injury of the person entitled in remainder or reversion." Civil Code (1910), § 3666. The petition does not charge that the destruction of the premises by fire was due to the negligence of the life-tenant. We are of the opinion that under the circumstances due consideration should be given to the fact that the weight of authority is in favor of the first rule, especially in view of the strong arguments in behalf of that rule by the courts which have adopted them. We are especially driven to this view, because it is not an open question in this State that when an estate is given to one for life or years, with remainder to another, the life-tenant is not a trustee for the remainderman. *Russell* v. *Kearney,* 27 *Ga.* 96 (3), 100. There is no duty placed upon the life-tenant to insure the remainder interest for the benefit of the

remainderman, under the allegations of the petition; therefore, viewed simply on this aspect of the case, we conclude that the petition set out no cause of action.

2. We will now consider whether or not the petition set out a cause of action based on the allegations in regard to the relationship of guardian and ward. We must enquire what was the duty of Leverett, as guardian to his ward, Joycie Ruth Butts. We will assume that Leverett was appointed by the ordinary guardian of the estate, as well as the person of his ward. The estate, in so far as it is concerned in this case, is a remainder interest in a house and lot and furniture contained in the house. "With respect to the property of the infant the guardian is a trustee." 28 C. J. 1123, § 204. "As a matter of law guardians of the property of wards are trustees whose power over the property of their cestui que trusts are defined by law." *Howard* v. *Cassels,* 105 *Ga.* 412, 416 (31 S. E. 562, 70 Am. St. R. 44) ; *Burke* v. *McKenzie,* 124 *Ga.* 248, 249 (52 S. E. 653). Our code prescribes general rules for the guidance of guardians with regard to the person and property of their wards, but the question with which we are now dealing is not dealt with by the statute in terms. It is a general rule that guardians are charged with the duty, in the management of the property of their wards, to use the same degree of care and diligence for its protection that a prudent man would use in the care and protection of his own property. "All persons acting in a fiduciary character are bound to use the same care and management that a prudent man would exercise over his own affairs. What is the requisite diligence, will depend on the attendant circumstances." Glover *v.* Glover, 1 McM. (S. C.) 153; 2 Kent's Com. 336, 337. The Civil Code (1910), § 3074, provides: "The guardian can not borrow money and bind his ward therefor, nor can he, by any contract other than those specially allowed by law, bind his ward's property, or create any lien thereon." And there are several other sections of the code which restrict the power of the guardian in the expenditure of the ward's income and in the disposition of the ward's property. The question therefore arises, whether the exercise of ordinary care for the interest of the ward in this case would require the guardian to insure the same against loss by fire. In Woerner's American Law of Guardianship, at p. 202, it is said: "Besides keeping the buildings of his ward in good repair and

tenantable condition, it is the guardian's duty to keep them properly insured." The author cites only one case in regard to insuring property: Means *v.* Earls, 15 Ill. App. 273. Under the facts of that case it was held that the guardian was not liable to the ward for the loss incurred by his failure to insure the property. In the opinion it was said: "In the absence of any statute imposing upon the guardian the duty of insuring the property of the ward, we may properly refer to some of the general principles of the law bearing upon the subject of the duties and liabilities of trustees." It then cites Perry on Trusts and Wait's Actions and Defenses, to the effect that guardians are required to use ordinary prudence and diligence in the management of the estate of their wards, and that they are liable for losses incurred through culpable indifference and negligence. The opinion concludes as follows: "The negligence, to charge the guardian, must affirmatively appear; and we are unable to conclude from the proofs there was such want of ordinary prudence, care and diligence, and such supine and gross negligence, as under the general rule respecting the liability of trustees would charge this guardian. . . It would be bad policy to impose upon guardians and administrators liabilities and burdens of an onerous and doubtful character, as it would greatly tend to discourage fit and responsible persons from assuming such trusts." With the general principles stated in this opinion we are in entire accord, as they constitute a mere restatement of well-recognized general rules of force in this State. In the Means case one of the facts stated is, "the guardian all the while having money of the ward in his hands with which he might have kept up the insurance." After considering all of the authorities, the conclusion is inevitable that the failure of a guardian to insure the property of his ward would not under all circumstances render him personally liable on account of loss by fire, but each case would depend upon its own particular facts. In the present case the allegations of the petition do not show that the guardian had in his possession funds belonging to the ward with which to pay premiums on fire insurance, nor does it show any other state of facts which would authorize the conclusion that ordinary diligence and prudence on his part required the guardian, as a matter of law, to insure the remainder interest of the ward for her benefit. We therefore conclude that under the facts alleged no duty was imposed

by law or otherwise upon the guardian, the failure to perform which renders him liable to the ward for her loss. In fact there is no allegation that damages are sought on the ground that the guardian was guilty of negligence. Recovery is sought on the ground that the proceeds of the insurance actually received constituted in equity a trust fund in part for the benefit of the ward as a cestui que trust. The issue does not involve the question of the guardian misappropriating his ward's money. The proceeds of the insurance were paid by the insurance company to Leverett individually as the assured under the policy—the only person having any rights as an assured thereunder. The company indemnified Leverett, not Leverett, guardian. If Leverett insured his interest in the property for a larger sum than it was worth, the insurance company only could complain. One not a party to the insurance contract could not complain. The question of following trust funds is not involved, because the insurance proceeds never became trust funds. It is unnecessary to deal with the allegation that Leverett was also executor of the estate of his wife. That question is not involved in the case. The court, for the reasons stated above, in our opinion did not err in sustaining the demurrer to the petition.