GRIFFIN *et al. vs.* FLEMING, executor, *et al.*

A testator's will provided that a certain lot and premises, then occupied by him, should be assigned to his executor thereinafter named, or purchased by him, if sold at public outcry, in the division of the property and effects jointly held by the testator and his brother, provided the same could be obtained at a reasonable price, and that, when so acquired, his wife and unmarried children be permitted to occupy the same, free of rent or other charges, during her widowhood, and at the death or marriage of his said wife, said lot and premises should be sold by his said executor, and the proceeds thereof should be equally divided among his children and the lineal descendants of such as might be dead, etc. The executor obtained a conveyance from the brother of the testator of his interest in the property, to be held and disposed of as provided by the will. With the knowledge of this fact, the legatees settled with the executor, leaving him in possession of this property. He returned it for taxation each year, as part of the estate of the testator, and made returns to the ordinary until 1862, when the funds in his hands were exhausted. In 1875, and other years thereafter, at the request of the executor, one of the testator's children made advances, in order to pay taxes and make necessary repairs. The bills for these amounts were approved by the executor as charges on the estate. After the death of testator's wife, his administrator *de bonis non* sold the property, and filed a bill for direction as to the distribution of the proceeds:

*Held,* that such advances were a proper charge upon the estate. While the will may have created a life estate in the widow and unmarried children of the testator, yet the language used shows that he intended to create a *quasi* tenancy at sufferance or will; that the widow should occupy the house, free of rent and free from the payment of taxes and the duty to make repairs, the title being in the executor. Therefore, the principle that a life tenant is bound to pay taxes and make repairs is not applicable.

(a.) If the widow were a life tenant, the executor having no means with which to pay taxes and make repairs, and the life tenant being unable to do so, if another person advanced money for this purpose, at the instance and with the approval of the executor, it would be a charge against the estate which a court of equity would enforce, it being a trust estate and the title being in the executor.

(b.) The bar of the statute of limitations did not apply; and if it were otherwise, a court of equity would remove it, under the circumstances of this case.

April 8, 1884.

Wills. Estates. Equity. Liens. Tax. Statute of Limitations. Before Judge Roney. Richmond Superior Court. October Adjourned Term, 1883.

Reported in the decision.

J. H. Martin; Foster & Lamar, for plaintiffs in error.

Frank H. Miller, for defendants.

Blandford, Justice.

Phineas Butler died in 1858, testate, and William A. Walton, qualified as executor under his will, September 13, 1858. Testator, after giving to his wife, Harriet Butler, certain servants, with his household and kitchen furniture, and all other things of a perishable nature in and about his house, and certain bank stock, and making special provision for her in lieu of dower, or against any other claim she might legally prefer against his estate, and after providing for each one of his children as therein set forth by the 14th item, "declared it" to be his will and desire, that the lot and premises on the northeast corner of Greene and McKinnie streets, in the city and county aforesaid, then occupied by him, should be assigned to his executor thereinafter named, or purchased by him, if sold at public outcry, in the division of the property and effects jointly held by the testator and his brother, Nehemiah K. Butler, provided the same could be obtained at a reasonable price, and that when so acquired, his said wife and unmarried children should be permitted to occupy the same, free of rent or other charge, during her widowhood, and at the death or marriage of his said wife, that said lot and premises should be sold by his said executor, and the proceeds thereof should be equally divided among his children and the lineal descendants of such as might be dead, "the latter to represent their parents and the shares therein of my daughters, Amanda M. Griffin, Harriet A.

Smith and Josephine D. Philpot, to be paid to their respective trustees, and held by them subject to the same uses and trusts hereinbefore declared in the several bequests to them (my said daughters)." And by the 16th item, testator declared, " it is further my will and desire " that a division of the property and effects, held jointly by testator and his brother, be made as soon as practicable after testator's death, but not with any unnecessary haste or inconvenience to his brother as surviving partner.

Further authority was given to the executor in item 17th to sell, privately or at public outcry, such parts or portions of testator's property, real or personal, as he may think expedient or necessary to execute conveniently the provisions of this will.

Thereafter, by deed dated January 1, 1860, recorded February 16th, 1863, Nehemiah K. Butler conveyed to William A. Walton, as executor of Phineas Butler, for the sum of one thousand four hundred and sixty-five dollars, his undivided one-half interest in and to the lot occupied by testator at the time of his death, the deed reciting the whole lot to have been sold at public outcry and purchased by the said executor as directed by the will of said testator.

The *habendum* clause of the deed recited it " to be held nevertheless, and disposed of by him or his successors as provided in the 14th item of the will of said Phineas Butler, deceased, to which express reference is hereby made." After such purchase, each and every one of the legatees under the will of Phineas Butler, with full knowledge of such purchase, accepted a settlement with William A. Walton, executor, of the property coming to them from the estate under the provisions of the will, leaving in the possession of the executor the said realty. He returned the same for taxation for state and county taxes from year to year as part of the estate of Phineas Butler, and made returns thereof to the ordinary's office of Richmond county down to the year 1862, when the funds in

his hands were exhausted. Thereafter advances were made from time to time by George P. Butler at the request of said executor, who subsequently endorsed on his returns as follows: " August 2d, 1875. The tax items above charged were not paid by me as executor of Phineas Butler, because I have not had, at any time since the close of the war, any productive property in my hands belonging to the estate; they have therefore been paid by Mr. George P. Butler with his own money, and under the 14th item of his father's will, they should be regarded as a charge upon the property taxed, viz.: the house and lot described in the said 14th item of the will, and paid out of the proceeds of the property when sold; they are supported by proper vouchers," signed " William A. Walton, executor of Phineas Butler, deceased."

A bill for repairs, in addition to the taxes, was approved February 15th, 1877, as appearing to be absolutely necessary to preserve the house from serious injury; and again, on the subject of painting, April 30th, 1879, the said executor stated in writing that in his opinion the dwelling house, occupied by Harriet Butler under the will, should be painted outside to preserve it, as it had not been painted for over twenty years, and must decay and deteriorate in value unless painted at once, the estimate for the work being very reasonable, closing with the statement to George P. Butler, " if you have it done, the estate should pay you the amount with interest on final division. I have no funds to do it with." And when paid, the executor approved the items as found to be supported by proper vouchers, January 24th, 1880. Again, on the 29th of March, 1881, Mr. George P. Butler in writing called the attention of the executor to the condition of the roof of the kitchen, and the estimated cost of re-shingling the same, stating that he was willing to advance it, if it met with the approval of the executor; the executor endorsed his approval in writing, and the money was advanced; subsequently, George P. Butler died June 29th, 1882; William

A. Walton, the executor, died September 2, 1882; and Harriet Butler, widow of testator, died October 21, 1882. William H. Fleming was appointed administrator *de bonis non*, with the will annexed, January 5, 1883, and pursuant to the authority contained in the 14th item of said will, proceeded to sell the property at public outcry, February 6th, 1883, when it brought the sum of seven thousand five hundred dollars.    Margaret P. Butler, executrix of George P. Butler, presented to him for payment the statements and vouchers for amounts due her testator for the aforesaid expenditures for taxes and repairs, on the 24th of February, 1883.

Objections to the payment were raised by certain of the legatees interested in the fund, and thereupon the administrator, with a view of protecting himself and his securities, filed his bill for direction May 5, 1882, making parties defendant of all the legatees along with the said executrix of George P. Butler.    Answers were filed by Mark B. Griffin, and the other children of Amanda M. Griffin, claiming it to be the intention of the testator to permit his widow and children, until they were married, to occupy the house and lot free of rent or other charge to his estate, but that the beneficiaries were responsible for and should be required to pay off all the taxes, insurance and like obligations imposed by either the condition of the property from wear and tear, or by the proper authorities by assessments or otherwise, expressly charging that the claims were for the most part barred by the statute of limitations, and if they were in fact not thus barred, they could not be valid and binding debts, or legal obligations of the estate. They also denied the sufficiency or validity of the papers signed by the executor to bind the estate in favor of George P. Butler.    This answer was adopted by Jane M. Simmons and others.    Bessie A. Bond answered, not denying the allegations or facts contained in the bill and the correctness of the exhibits; but she called for legal proof of the

same, and submitted to the court and jury the determination of her rights in the premises.

Thereafter the case came on to be heard before the judge, to whom, by consent, were referred all questions of law and fact, who decreed that the claim presented to the complainant for payment by the executrix of George P. Butler, save and except the item for building a stable and introducing water on the premises, were valid and legal charges against the estate, and were incurred with the sanction and approval of William A. Walton, executor of the will of Phineas Butler, and that the proceeds from the property now sold by the administrator *de bonis non*, with the will annexed, should be first charged with the payment of the same as part of the expenses of administration; and the said administrator was ordered to make payment accordingly.

The brief of evidence shows an agreed statement of facts, that the schedule of accounts and vouchers referred to in the bill was correct; that the premises were purchased as charged in the bill, and the estate distributed to the legatees, and by them receipted for, except the claim to a half interest in certain lands in South Carolina; that the executor had no funds of the estate in hand after January 1, 1866; that the administrator *de bonis non* had sold the property under the authority of the will alone; that Mrs. Harriet Butler occupied the premises until her death, October 21, 1882; that George P. Butler lived there with his mother, except while absent in the army, until his marrage, November 7, 1866; and that he continued to remain there until 1872, but paying board for himself and family; that all the other children of Phineas Butler were married previous to the marriage of George P.; that after January 1, 1866, Mrs. Harriet Butler had no means or ability to pay the taxes or repairs; that the property had doubled in value since 1866, not having been previously worth more than three thousand dollars.

Upon bill filed by the administrator, praying for direc-

tion as to the payment of the claim of Margaret P. Butler, executrix of George P. Butler, deceased, for taxes paid and money advanced for repairs, the court held that the claim should be paid, and decreed accordingly. To this decree several of the legatees excepted, and error is now here assigned thereon.

The plaintiff in error insists that the widow of Phineas Butler had a life estate in the house and lot purchased by the executor, under the 14th item of the will, and that, incident to this estate, the life tenant is bound to pay taxes and make repairs, and cites Code, §§252 to 254 inclusive; 29 *Ga.*, 549; 20 *Id.*, 793; 1 Wash. on Real Prop., 125–6; Code, §2255; Tiedman on Real Property, sec. 68. The authorities referred to seem to sustain his position. But we think that the will of Phineas Butler, while it may create a life estate in the widow and unmarried children of testator, yet, by the use of the words, "his wife and unmarried children be permitted to occupy the same, free of rent or other charges, during her widowhood; at the death or marriage of his wife," etc., shows that testator intended to create a *quasi* tenancy at sufferance or will; that it was thereby intended that the widow should occupy the house free of rent, and free from the payment of taxes, and freed from the duty to make repairs, the title to the property being in the executor. If this were not so, and if the widow were a life tenant, and, under the circumstances, the executor had no means with which to pay taxes and make repairs, and the life tenant was unable likewise to do so, and another person advanced money for this purpose at the instance, or by the approval, of the executor, this would constitute a charge against this estate. It is a trust estate, the title being in the executor, and would be liable to pay this claim. Code, §3377. George P. Butler, as a legatee under this will, and as such being interested in this property with his sisters, when he found the property about to be sold for taxes, there being nothing in the hands of the executor to pay with, and the life tenant

being too poor, and unable to pay the taxes, and the premises being in a state of decay, had the right to advance money to pay the taxes and to pay for proper and needed repairs, and such advances were as much for the advantage of the other legatees as for the person making the same; and a court of equity, under these circumstances, would hold that the proceeds of this property, in the hands of the administrator, were first liable for the advances made by one legatee for the preservation of the property, in which all the legatees were equally interested. This is equity and good conscience. The property might have been sold for taxes, and may have greatly deteriorated in value by decay. The source from which the fund arose may have been destroyed but for these advances; they were a benefit to all interested; and the fund should first repay these advances, and the balance be divided as directed by this will. The taxes being *ad valorem*, and assessed against the whole value of the property, would the life tenant be liable to pay the same?

It is insisted that the claim for advances is barred by the statute of limitations. We do not think so, under the proofs, but in a case like this, a court of equity would remove the bar. See *Jordan vs. Brown, administrator of G. A. Dawson*, decided at the present term of this court, especially where it would be most inequitable and unjust to enforce it. The payment of these advances is to be made out of the fund in the hands of the administrator arising from the sale of the property, which sale could not take place until the death of the life tenant. The decree of the court below is affirmed.

Judgment affirmed.