36194, 36197. CITIZENS & SOUTHERN NATIONAL BANK v. MARTIN; and vice versa.

JORDAN, Presiding Justice.

These are interlocutory cross-appeals from the denials of summary judgment to the plaintiff widow and to the defendant executor.

Plaintiff, sole heir at law and widow of the testator, sued the executor seeking a declaratory judgment setting aside her husband's will as being violative of Georgia's mortmain statute, Code Ann. § 113-107. On the first appearance of this case (*Citizens &c. Nat. Bank v. Martin,* 244 Ga. 522 (260 SE2d 909) (1979)), this court held that the

will did come within the provisions of the statute because the will had been republished by codicil 67 days prior to the testator's death so that it was voidable if he had devised more than one-third of the first $200,000 of his estate to charity. We went on to hold that the question of the percentage left to charity could not be determined from the record since that appeal was from a judgment on the pleadings thus necessitating reversal of judgment for the widow.

Upon the return of the case to the trial court, the executor moved for summary judgment on count one of the widow's three-count complaint, and she moved for summary judgment on count one of her complaint. Finding issues of fact remaining, the trial court denied both motions, and both sides appeal.

At issue in this case is Item IV and Item V of the will. Item IV leaves the widow a life estate in the marital home place. Item V gives the widow a six percent life annuity provided out of a charitable remainder annuity trust. See 26 USCA § 664 (d) (1); *Citizens &c. Nat. Bank v. Martin,* supra, at 523-25 (for the text of Item V of the will). In order for the testator's will to withstand the proscription of the mortmain statute, he must have bequeathed at least $133,334 to the widow or others not representing charitable organizations.

The executor submitted affidavits on its motion for summary judgment which indicated that the present value of the life interest in the home place together with the present value of the annuity amounted to a gift to the widow of $134,000. The widow's argument in rebuttal to this evidence and in her own affidavit submitted on her motion for summary judgment is that the actual value of her annuity — calculated at $23,455.88 per annum — is reduced by the obligation of the upkeep on the home place imposed on her to such an extent that her total gift is well below the statutory minimum. The question for this court is whether the value of a bequest, for purposes of the mortmain statute, may be reduced by the amount the life tenant is required to spend out of the total gift on the maintenance of the life estate. The widow contends that this is a question of first impression in Georgia.

Citing Code Ann. § 85-604, the executor maintains that the burden is squarely on the life tenant to exercise ordinary care to preserve the life estate. The life tenant is chargeable with the taxes on the life estate accruing during the life tenancy. Code Ann. § 92-110. It has been held that the life tenant is bound to make necessary repairs to maintain the property. See *Stevens v. Citizens &c. Nat. Bank,* 233 Ga. 612 (212 SE2d 792) (1975); *Griffin v. Fleming,* 72 Ga. 697 (1884). As to insuring the life estate, *Clark v. Leverett,* 159 Ga. 487 (126 SE 258) (1924), indicates, in dicta at least, that it is the duty of the life tenant to insure the property, though this position has been

criticized. See the dissent in *Clark v. Leverett,* supra, at 496-501; Pindar, Ga. Real Est. Law, § 7-31. At any rate, when the life tenant does insure the property, and it is subsequently destroyed, the proceeds should be used in the rebuilding of the structure on the property or be held for the benefit of the remainderman. *Crisp County Lumber Co. v. Bridges,* 187 Ga. 484 (200 SE 777) (1939). The widow in this case maintains, or has maintained on her behalf, insurance on her life estate.

The language of the will makes clear that not until the death of the widow when the remainder interest of the home place is distributed to the trustees of the charitable trust set up by the testator (as established in Item VI of the will) will the trustees be responsible for its necessary maintenance. For these reasons, we find that the widow is responsible for the maintenance of the life estate. The fact that she must use her own income derived from whatever source available (including her annuity) to accomplish this end does not devalue her total bequest from her husband's will any more than her personal living expenses would devalue her bequest since that is the purpose behind the establishment of an annuity for her — to provide for her until her death.

Nor do we see any merit to Mrs. Martin's argument concerning 26 USCA § 2056 (b) (4) (B). That IRC section provides that for determining the amount of the marital deduction, any obligation imposed on the surviving spouse should be added to the value of the deduction. In other words, the obligation imposed here (by law) on the widow to maintain the life estate should be deducted from her overall gift from her husband's estate.

We agree with the executor that this section, applicable for purposes of valuing the marital deduction from a decedent's taxable estate, has no applicability for the purposes of the valuation necessary to determine a mortmain statute violation. The two valuations have entirely different incentives.

Therefore, we conclude that the present value of the widow's life estate, though it would allegedly be devalued by her obligation for its upkeep under the marital deduction statute, may be taken fully into account in valuing her gift for purposes of the mortmain statute. Since Mrs. Martin's motion for summary judgment was based upon the converse of this position, it was properly denied by the trial court.

As to the executor's motion for summary judgment, it submitted three affidavits establishing that the value of the home place is $54,000, that the present value of Mrs. Martin's life estate is $16,263.13, and that, pursuant to the formula provided in Item V of the will, the present value of Mrs. Martin's bequest is $117,736.82. The total of these two figures is $134,000. This figure is also the

amount of property we found exempt from estate tax in the first appearance of this case. *Citizens &c. v. Martin,* supra, at 526. It is more than two-thirds of the first $200,000 of the testator's estate. There is no genuine issue as to any material fact raised as to these affidavits nor is there any issue of fact remaining for resolution by a jury. The executor's motion for summary judgment as to count one of Mrs. Martin's complaint should have been granted, and that part of the trial court's order denying the same is hereby reversed.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Nichols, J., who is disqualified.*

ARGUED MAY 13, 1980 — DECIDED SEPTEMBER 9, 1980.

G. *Wilbur Warner, Jr., John L. Westmoreland, Jr., John C. Mayoue,* for appellant.
J. *Ralph McClelland, Jr., J. Ralph McClelland, III,* for appellee.