## 37284. MARTIN v. CITIZENS & SOUTHERN NATIONAL BANK.

GREGORY, Justice.

Appellant Rosabel Alice Wood Martin, appeals from a grant of summary judgment to appellee, the Citizens and Southern National Bank, and from the denial of her motion for summary judgment. Appellee is the executor of the estate of James Vincent Martin, deceased.

Appellant and Mr. Martin were married in 1941. The marriage lasted until his death on October 8, 1978. Mr. Martin's will grants appellant a life estate in the marital residence and provides for her benefit a lifetime annuity provided out of the charitable remainder annuity trust. The remainder of Mr. Martin's estate, valued by the executor at approximately three quarters of a million dollars, is devised to charity.[1] In that portion of appellant's complaint pertinent to this appeal, appellant claims at least one-half of the assets now being held by appellee as executor of the estate, under an implied or resulting trust theory.[2] Appellant claims that during her marriage she and her husband pooled their assets and contributed jointly to the accumulation of an estate which belonged to both of them. The evidence contained in the record, which is largely undisputed, can be summarized as follows:

Appellant was born in 1899. She delayed marrying for some time

---

[1] We recently held that the will was not violative of Georgia's mortmain statute. *C. & S. Nat. Bank v. Martin,* 246 Ga. 284 (271 SE2d 192) (1980).

[2] We affirmed a jury verdict in favor of appellant with regard to Fulton County property titled in Mr. Martin's name in *C. & S. Nat. Bank v. Martin,* 246 Ga. 756 (272 SE2d 711) (1980).

so she could devote her attention to her aged father, who died in 1939. Appellant and Mr. Martin were married in June of 1941. At the time of her marriage, appellant owned a house and fourteen acres of land on Hightower Road in Fulton County that had been in her family for many years. In addition, she owned another 10 acres of land nearby that her father had given her prior to his death, and cash in an estimated amount of somewhere between five and fifteen thousand dollars. Mr. Martin ran a barber shop in premises he leased. He owned the equipment in the barber shop and he owned an old Packard automobile. Mr. Martin owned no real estate at this time and had no income other than from his barber shop. Shortly after the marriage, the couple purchased a laundry and dry cleaning plant. At the same time, a cafe across the street from the barber shop was purchased and converted into an addition to the barber shop and a pickup station for the laundry. Appellant began working there, taking in laundry and cashiering for the barbers.

After World War II began, Mr. Martin availed himself of an opportunity to go to Florida to manage the barber shops in two army camps. The laundry in Atlanta was sold. After arriving in Florida, a building was leased for a dry cleaning operation not far from the army camps. While Mr. Martin worked in the barber shops in the army camps, appellant ran the dry cleaning plant. This arrangement lasted until the war was over. The couple then returned to Atlanta, living in the Hightower Road house belonging to appellant. Some apartments were purchased on Gordon Street for a small down payment. Thereafter, these apartments produced sufficient rent to cover the payments. The apartments sold in 1968 for $100,000. In 1949, the couple purchased a motel on Moreland Avenue for $25,000, paying $5,000 down and $400 per month. This motel sold in 1966 for $225,000.

From 1949 until the motel was sold in 1966, appellant and Mr. Martin lived at the motel, although keeping the former residence on Hightower Road. During this period of time, appellant ran the motel, from which the bulk of the marital income was derived, and performed all necessary duties in connection with the motel's operation. Mr. Martin had no job as such. He spent his time buying and selling real estate.

In 1958, the ten acres of land on Hightower Road owned by appellant were sold for $20,000. This money was used to pay various debts relating to real estate acquired during the marriage. While some of the property acquired during the marriage was initially in appellant's name, all the real estate was eventually titled in Mr. Martin's name.

Appellant never received any salary. The money coming into the

marriage from the various business ventures in which appellant and Mr. Martin were involved was put in joint accounts to which each had access. Appellant did not work after the motel was sold in 1966. Mr. Martin ceased his business activities subsequent to a prostate operation he underwent in the early 1970's. About a year before Mr. Martin died, he, without consulting appellant and without her knowledge, withdrew over $100,000 from various joint accounts and deposited that money into accounts payable only to him.

Appellant testified that the real estate was put in her husband's name to facilitate his handling the various transactions in her absence while she ran the motel. Although she found out before Mr. Martin died that he had withdrawn a considerable amount of money from their joint accounts, she assumed that he was merely trying to obtain a more favorable rate of interest. According to appellant, while she and Mr. Martin did not specifically agree that he was to hold any of his property in trust for her benefit, they had an understanding that, because they had worked "hand-in-hand" all during the marriage, all the property was as much hers as his.

Personal and business associates of Mr. Martin testified by way of affidavits that Mr. Martin had acknowledged to them that he and appellant were partners and that what each of them did was for their joint benefit and that Mr. Martin never referred to the property as being "his"; it was always "ours." Mr. Martin told one of them that when he had met appellant he owned nothing and "whatever had been accumulated through the years had been primarily due to Mrs. Martin's efforts — that whatever he was, Mrs. Martin had 'made him.' "

(1) Regardless of where the burden of proof will lie at the trial of this case or what presumptions shall apply, the trial court erred in granting appellee's motion for summary judgment.[3] The evidence before the court must be construed most strongly against the movant. *Burnette Ford, Inc. v. Hayes,* 227 Ga. 551 (181 SE2d 866) (1971). The evidence, so construed, shows that appellant and Mr. Martin had an understanding or agreement that appellant was to retain a beneficial interest in the marital property. It is not necessary that an express agreement be shown. To establish a resulting trust the intention of the parties may be shown by the nature and circumstances of the transactions and the conduct and declarations of the parties.[4]

---

[3] See Code Ann. §§ 108-106, 108-116. Former Code Ann. § 53-506 was repealed effective July 1, 1981. Ga. Laws 1981, p. 704.

[4] See Costigan, "The Classification of Trusts as Express, Resulting, and Constructive," 27 Harvard L. Rev. 437 (1914). Bogert on Trusts (5th Ed. 1973) includes in Costigan's "intent-enforcing" class of trusts: (1) cases where the parties

*Talmadge v. Talmadge,* 241 Ga. 609 (247 SE2d 61) (1978); *Epps v. Wood,* 243 Ga. 835 (257 SE2d 259) (1979).

(2) Because the evidence, construed most strongly against appellant as to her motion for summary judgment, would authorize a finding that there was an absence of the requisite agreement or understanding the trial court did not err in denying her motion for summary judgment.

*Judgment affirmed in part; reversed in part. Jordan, C. J., Marshall, Clarke and Smith, JJ., concur. Hill, P. J., concurs in the judgment only.*

DECIDED SEPTEMBER 8, 1981 —
REHEARINGS DENIED SEPTEMBER 23, 1981.

*J. Ralph McClelland, Jr., J. Ralph McClelland III,* for appellant.
*Westmoreland, Hall, McGee, Warner & Oxford, C. Wilbur Warner, Jr., John L. Westmoreland, Jr., John C. Mayoue,* for appellee.

---

have clearly expressed an intent to have a trust exist; (2) cases in which the parties have used ambiguous language which the court construes as showing a trust intent; and (3) cases in which the parties have expressed no intent by words, but have performed acts from which the court infers that a trust was intended. Bogert, Ch. 7, § 71, p. 262.