40143, 40534. CITY OF MARIETTA et al. v. HOLLAND
(two cases).

BELL, Justice.

This is a dispute over retirement disability benefits. Appellee
served as a part-time councilman for appellant City of Marietta (the
City) from 1961 to May, 1980. Appellee has a heart condition, and in
June 1970 the Social Security Administration (SSA) determined he
was eligible for disability benefits, and began payments thereof. In
November 1973 the City joined the Joint Municipal Employees
Retirement System (JMERS), Ga. L. 1965, p. 421 (now OCGA Title
47, Ch. 5 (Code Ann. § 69-1701 et seq.)). The original pension plan
agreement between the City and JMERS did not include members of
the City council (the council). In June 1975 appellant Marietta City
Council adopted, without prior published public notice, an ordinance
extending the pension plan's coverage to elected City officials. The
City terminated its participation in the plan in January 1981.

Under the pension plan, participants were deemed eligible to
receive retirement disability benefits if they were entitled to SSA
disability benefits. During the period 1975-80, the City listed ap-

pellee as a participant in the plan, and paid money into the pension fund on his behalf. Appellee resigned from the council in 1980 on account of his heart condition, and applied to the City's pension committee for disability benefits. This application was denied, as was his appeal to the council. Appellee subsequently reapplied for benefits, which were again denied. After exhausting his administrative remedies he filed suit in superior court in July of 1981, naming the City, the council, and the pension committee as defendants. In his suit he prayed for mandamus to issue to require acceptance of his application, damages for breach of contract in the amount of benefit payments which he would have received had his application been accepted, and attorney fees.

Cross-motions for summary judgment were filed, and were denied. Application for interlocutory appeal was then made to this court, which we denied. Thereafter, the City contacted SSA, alleging that appellee was ineligible for disability benefits because his income as a member of the council had exceeded certain income limits used by SSA in its determination of disability eligibility. However, after conducting its own investigation of the allegations, SSA determined in December of 1982 that appellee was still entitled to benefits. The parties renewed their cross-motions for summary judgment, and the trial court granted appellee's and denied appellants', awarding appellee damages for past JMERS disability payments, and issuing a mandamus to accept appellee's application. In addition, the court awarded attorney fees, OCGA § 13-6-11 (Code Ann. § 20-1404), reserving the issue of the amount of the award. Defendants appealed in 40143, and we affirm in part and reverse in part. The trial court subsequently entered an order awarding $5000 in attorney fees to appellee. Defendants appealed this order in 40534, and we reverse.

1). The threshold issue is the validity of the June 1975 ordinance. Appellants contend that the council was required by statute to advertise notice of its intent to consider the ordinance extending participation in the JMERS pension to its own members, and that the omission to do so was fatal to the ordinance, thereby invalidating appellee's purported participation in the City's JMERS. We disagree.

Appellants' argument is based upon the language of former Ga. Code Ann. § 69-1019 (now OCGA § 36-35-4), which was part of the Municipal Home Rule Act of 1965, as amended, as it existed when the disputed ordinance was passed in 1975. Ga. L. 1974, p. 195. The relevant language was, "[t]he governing authority of each incorporated municipality is authorized to fix the salary, *compensation,* and expenses of the municipal employees and members of the governing authority and/or legislative body, *and to*

*provide* insurance, *retirement and pension benefits,* coverage under Federal Old Age and Survivor's Insurance programs, hospitalization benefits, and workmen's compensation benefits, for its employees, their dependents and survivors, *provided that no action to increase compensation of the elective members of the governing authority or legislative body* shall be taken until notice of intent to do so shall be published in a newspaper of general circulation in such municipality at least once a week for three consecutive weeks immediately preceding the week in which such action is taken." (Emphasis supplied.)

Appellants contend that, because retirement plan benefits are a species of deferred compensation, former Ga. Code Ann. § 69-1019 required that the council should have advertised its intention to extend retirement plan benefits to itself. However, we think this argument fails for two reasons. First, and most obviously, although we agree that, as a general proposition, retirement plan benefits are deferred compensation, see *DeWitt v. Richmond County,* 192 Ga. 770 (16 SE2d 579) (1941), the General Assembly drew a clear distinction in Ga. L. 1974, p. 195 between "compensation," on the one hand, and "retirement and pension benefits," on the other. Since the distinction between these terms is plain in the first part of the above-quoted statutory language, we see no reason to infer that the General Assembly intended to use the term "compensation" in a more generic sense in the second part. Therefore, we will not construe Ga. L. 1974, p. 195 as imposing the condition of prior advertisement upon the June 1975 ordinance of the council.

Our second reason for declining to interpret the Home Rule Act in the restrictive fashion urged by appellants is based upon a comparison of the evolution of that Act and JMERS. As originally enacted, the Home Rule Act provided that "the governing body of any incorporated municipality shall have the following powers, under this Act, relating to the administration of municipal government: (a) The power to . . . define, regulate and alter the . . . compensation . . . of all municipal officers, agents and employees: Provided, that the municipal governing body shall not have the right . . . to alter their own compensation or the compensation of their successors. . . ." Ga. L. 1962, pp. 140, 141-142. In the form it took in the 1965 reenactment of the statute, this provision read, "(a) The power granted to municipalities . . . shall not be construed to extend to . . . 1. Action affecting the . . . compensation, and expenses and allowances in the nature of compensation . . . for the elective members of the municipal governing authority." Ga. L. 1965, pp. 298, 302-303. In 1973 the General Assembly amended the Home Rule Act to essentially the same form it had when the June 1975 Marietta ordinance was passed,

Ga. L. 1973, pp. 778, 780-781, with the exception that the phrase, "of the members of the governing authority or legislative body" was inserted between the words "compensation" and "shall" by the amendment of 1974, Ga. L. 1974, pp. 195-196.

JMERS was created by Ga. L. 1965, p. 421. In the part relevant to our analysis, it declared the intent of the General Assembly to be "to provide a method whereby the municipal corporations of this State may, *in the discretion of their respective governing bodies,* provide retirement and other benefits to their employees through a common administrative and investment system. . . . This is considered to be in the public interest . . . [, and it] is therefore intended that this Act be liberally construed to effectuate this intent. Section 2. The following words and phrases as used in this Act shall . . . have the following meanings: . . . (5) "Employee" shall mean any full-time salaried, or hourly-rated person, including appointed and elected officers, in the active service of a municipal corporation of the State of Georgia." Id. at 422-423 (emphasis supplied). In 1973 the foregoing definition of "employee" was reformulated to "mean any full-time salaried or hourly-rated person in the active service of a municipal corporation of the State of Georgia, . . . and, *notwithstanding any laws to the contrary, any appointed or elected member of the governing authority of a municipal corporation of the State of Georgia.* Ga. L. 1972, pp. 637, 638 (emphasis supplied).

Thus, the law as it existed in 1975 had undergone a steady development toward granting members of municipal governing bodies greater discretion in setting their own compensation and retirement benefits. The 1973 session of the Assembly authorized members of municipal governing authorities to participate in JMERS, without any condition of prior advertising being specified within that statute, and with a specific provision that that act granted the enumerated powers notwithstanding any other laws to the contrary. We think it is significant that during the same session of the General Assembly the Home Rule Act, for the first time, permitted municipal governing bodies to establish and alter their own retirement and pension benefits, and did not, under a fair reading of the statute, expressly impose a prior advertising condition on the exercise of that authority. Construing the two statutes together, they evince a legislative intent to liberally allow council members such as appellee to govern their own pension and retirement benefits, in contrast to the clear legislative purpose to subject to public scrutiny and review any attempt by the municipal governing body to provide for its own "compensation."

For both of the above reasons, we find that the council was under no duty to pre-advertise its intent to consider the June 1975

ordinance, and that the ordinance was therefore validly adopted.[1]

2). Appellants also argue that appellee is not entitled to JMERS benefits because the terms of the retirement plan contract between the City and JMERS do not cover disabilities which preexisted adoption of the June 1975 ordinance. This argument is incorrect. Article III, Section 3 (e) of the contract provides that "[e]ach elected or appointed member of the Governing Authority who holds an elected office of the City on the effective date of [this ordinance, May 1, 1975] *shall be qualified to apply for participation on such effective date,"* (emphasis supplied). Appellants point out, however, that Article II, Section 46 of the contract defines "disability" in terms of "a physical or mental disability of a Participant who because of such disability *becomes* entitled to receive disability insurance benefits under . . . the Federal Social Security Act . . .," (emphasis supplied). Appellants contend that Section 46 implies that an elected official with a disability pre-dating the contract cannot be eligible to participate in the plan. To the extent this inference may be drawn, however, we think it is heavily outweighed by the clear expression of contractual intent in Article III.

For the reasons stated in the first and second divisions of this opinion, we conclude that the trial court did not err by granting summary judgment on the issues of mandamus and breach of contract.

3). The remaining issue for our consideration is the trial court's grant of attorney fees. Appellee argues that the award was correct under OCGA § 13-6-11 (Code Ann. § 20-1404), which provides that "where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow [expenses of litigation]." Appellee argues that appellants' bad faith was shown by the City's refusal to accept appellee's application for benefits, even though, during the pendency of this litigation, the City approved another former councilman's application for retirement benefits pursuant to the same City ordinance. Appellee also says that appellants' bad faith

---

[1] We have noted the arguments of the parties concerning the relevance of Ga. L. 1981, p. 1741. That act revised the Home Rule Act to expressly provide that actions to increase retirement benefits for elective members of municipal governing bodies are not subject to the requirement of publication of notice of intent, and, further, that "[a]ny previous actions to extend . . . retirement . . . benefits to members of the municipal governing authority are hereby validated." Id., pp. 1742-1743. In light of the result we reach in the first division of this opinion based upon the pertinent statutes and their history as they stood in 1975, there is no need to consider the effect, if any, of the 1981 amendment.

was shown by their instigation of the SSA investigation into appellee's eligibility for disability benefits which, according to appellee, delayed the course of litigation. Appellee contends that appellants provided erroneous information to SSA, and knew their allegations to SSA had no merit.

The trial court's judgment contained no findings or conclusions indicating which of the three grounds listed in OCGA § 13-6-11 (Code Ann. § 20-1404) the court relied upon in granting the judgment for attorney fees. On motion for summary judgment, the burden is on the movant to show that there is no genuine issue of material fact, and all evidence adduced on the motion is to be construed most strongly against the movant. *Martin v. Citizens &c. Nat. Bank,* 248 Ga. 174 (1) (281 SE2d 509) (1981). Although we have affirmed the grant of summary judgment to plaintiff regarding the merits of this case, we do not think that the correct resolution of the novel issues involved in this case was so clear-cut that it can be said that, as a matter of law, appellants' denial of liability had no reasonable ground, see *Fuller v. Moister,* 248 Ga. 287 (282 SE2d 889) (1981); *First Nat. Bank of Atlanta v. Wynne,* 149 Ga. App. 811 (3) (256 SE2d 383) (1979), and therefore the court erred in granting summary judgment to appellee on this issue. Moreover, since it is clear that, as a matter of law, appellants had reasonable grounds to contest the claim, there is no genuine issue of material fact as to whether any of the criteria of OCGA § 13-6-11 (Code Ann. § 20-1404) are applicable to appellants, and the court erred by failing to grant summary judgment to appellants on this issue.

*Judgment affirmed in part and reversed in part in 40143. All the Justices concur, except Hill, C. J., who dissents as to Division 3 to the extent it holds that the trial court erred in failing to grant summary judgment to appellants. Judgment reversed in 40534. All the Justices concur.*

DECIDED MARCH 15, 1984.

*Downey, Cleveland, Moore & Parker, Joseph C. Parker,* for appellants.
*Alston & Bird, Peter M. Degnan, G. Conley Ingram,* for appellee.
*Walter E. Sumner,* amicus curiae.

HILL, Chief Justice, dissenting in part.

In Division 3 we hold that the trial court erred in granting plaintiff's motion for summary judgment as to attorney fees. I agree that attorney fees should not be awarded on motion for summary judgment. However, I dissent to so much of Division 3 as holds that

the defendants were entitled to summary judgment that the plaintiff in this case was not entitled to attorney fees under OCGA § 13-6-11 (Code Ann. § 20-1404).