S04A0226. BAUERBAND et al. v. JACKSON COUNTY et al.

(598 SE2d 444)

HINES, Justice.

The Jackson County Board of Commissioners ("County") plans to enter into a lease purchase agreement with the Association of County Commissioners of Georgia ("ACCG") to finance and construct a new courthouse. ACCG is a non-profit organization that assists county governments. The proposed agreement is intended to comply with the requirements of OCGA § 36-60-13. The Bauerbands and several other residents of Jackson County ("Bauerbands") sued for an injunction, writ of mandamus, and declaratory judgment, to prevent the County from proceeding with the agreement, arguing primarily that the agreement results in the County incurring debt without a public vote approving the incurrence of debt, contrary to the mandate of Article IX, Section V, Paragraph I (a) of the Georgia Constitution. The Bauerbands appeal from the grant of the County's motion for summary judgment.[1] For the reasons that follow, we affirm.

Under the proposed agreement, the County will lease the land from ACCG, which will sell "certificates of participation" in the agreement. Proceeds from the sales will be held by a trustee, who will disburse funds for the construction of the courthouse. The County will pay an annual rent, and the agreement is renewable each year, for 30 years. Each renewal will terminate on December 31 of the renewal year. At the end of the 30 years, the County has the option to purchase the land. The agreement specifically provides that the County is under no obligation to appropriate money for annual rentals, and that the only obligation is "year to year."

1. The constitutional provision at issue concerning the authority of local governments to undertake debt reads:

The debt incurred by any county, municipality, or other political subdivision of this state, including debt incurred on

---

[1] The Attorney General intervened to defend the constitutionality of OCGA § 36-60-13.

behalf of any special district, shall never exceed 10 percent of the assessed value of all taxable property within such county, municipality, or political subdivision; and no such county, municipality, or other political subdivision shall incur any new debt without the assent of a majority of the qualified voters of such county, municipality, or political subdivision voting in an election held for that purpose as provided by law.

Ga. Const. of 1983, Art. IX, Sec. V, Par. I (a). The debt limitation based on the assessed value of taxable property is not at issue in this case, only the voting provision.

This Court has defined "debt" as used in this provision to mean a liability that is "not to be discharged by money already in the treasury, or by taxes to be levied during the year in which the contract under which the liability arose was made." *City Council of Dawson v. Dawson Waterworks Co.*, 106 Ga. 696, 713 (32 SE 907) (1899). In an apparent attempt to provide a regulated financing mechanism by which local governments may "enter into multiyear lease, purchase, or lease purchase contracts of all kinds for the acquisition of goods, materials, real and personal property, services, and supplies" *without* incurring "debt" under the constitutional definition, the General Assembly has enacted OCGA § 36-60-13. The trial court found that the lease purchase agreement met all of the requirements of OCGA § 36-60-13.

This Court has previously ruled upon the constitutional validity of OCGA § 36-60-13.

OCGA § 36-60-13 authorizes only those contracts that terminate all obligation on the part of the municipality at the close of each calendar year. Consequently, such a contract would fall outside the purview of Art. IX, Sec. V, Par. I since it does not constitute a "debt" within the meaning set forth in the *Dawson* case. Therefore, OCGA § 36-60-13 is constitutional.

*Barkley v. City of Rome*, 259 Ga. 355, 356 (381 SE2d 34) (1989).

Nonetheless, the Bauerbands contend that OCGA § 36-60-13 is unconstitutional as applied. In actuality, the arguments in support of this contention essentially constitute a facial attack on the statute under Article IX, Section V, Paragraph I of the Georgia Constitution, the very issue decided in *Barkley*, id. They assert that *Barkley* does not apply, however, claiming that in that case there was not a genuine case or controversy between adversaries, but that the litigation was "arranged" solely to elicit a declaratory ruling on the constitutionality of OCGA § 36-60-13. See OCGA § 9-4-2. But, even if that were so, it does not aid them. This Court in *Barkley* resolved these arguments,

and as a decision of this Court, it is binding on the court below. Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI.

The Bauerbands also assert that *Barkley* does not control because the contract at issue in that case dealt with personal property, whereas the contract in this case deals with real property. But, there is no distinction in OCGA § 36-60-13 between real and personal property; the strictures on leases for each class of property are the same. Similarly, the constitutional provision providing for popular vote on the assumption of debt makes no distinction between the two classes of property. Ga. Const. of 1983, Art. IX, Sec. V, Par. I (a). This Court will not engraft such a distinction onto either the Constitutional provision or the statute.

To the extent that the Bauerbands raise arguments addressing an unconstitutional application of OCGA § 36-60-13, they contend that the "reality" of the circumstances surrounding the lease purchase agreement mandates that future County commissions will necessarily be bound to re-authorize the lease, to avoid the consequences of terminating the arrangement that provides for the County's courthouse. Many policy choices made by local governmental bodies are difficult, but that does not render them unconstitutional. Clearly, a termination of the contract providing for the fire engine and computer systems involved in the *Barkley* opinion, supra, also would be difficult for the local government; such equipment is necessary to the provision of services expected by the citizenry of a modern government. Were the contracts providing for the availability of that equipment terminated, substitutes would have to be quickly found. Similarly, if this lease agreement is terminated, other office and courtroom space would have to be quickly found. However, hard choices regarding a decision to terminate a contract provided for under OCGA § 36-60-13, and the attendant difficult circumstances they may present, do not render meaningless the power of termination, which is required by the Code section to be included in such an agreement. That power is present in this agreement, and future County commissions are not bound to renew the agreement.[2]

Finally, the trial court found that the County's total obligations under the lease purchase agreement and its other outstanding contracts did not exceed the maximum obligation level permitted by OCGA § 36-60-13 (h) (1). That level constitutes the General Assembly's judgment as to the aggregate obligation a county can reasonably incur, absent assuming "debt" by a public vote, without the danger of

---

[2] Accordingly, as there is no debt within the meaning of Article IX, Section V, Paragraph I of the Georgia Constitution, there is no merit to the Bauerbands' argument that they and other qualified voters of Jackson County have been deprived of the right to vote prior to the assumption of debt, in violation of due process concerns.

being forced into bankruptcy or having to levy burdensome additional taxes on its citizens. While we accept the General Assembly's wisdom in setting the statutory level, we note that this Court's precedent invalidating attempts to circumvent constitutional debt limitations remain. See *Richmond County v. McElmurray*, 223 Ga. 440 (156 SE2d 53) (1967); *McElmurray v. Richmond County*, 223 Ga. 47 (153 SE2d 427) (1967); *Renfroe v. City of Atlanta*, 140 Ga. 81 (78 SE 449) (1913); *City Council of Dawson*, supra. Given the constitutional and statutory limitations, local governments would be wise to proceed with caution when entering into multi-year contracts.

2. The Bauerbands also challenge the lease purchase agreement as establishing a gratuity, in violation of the Georgia Constitution. See Ga. Const. of 1983, Art. III, Sec. VI, Par. VI. But that is not so. "This [C]ourt has adopted the ordinary definition of 'gratuity' as 'something given freely or without recompense; a gift.' Thus, there is no gratuity when the [County] receives substantial benefits in exchange for [consideration]." *Garden Club of Ga. v. Shackelford*, 266 Ga. 24 (1) (463 SE2d 470) (1995). There is no question that the County is receiving substantial benefits in exchange for its payments under the lease agreement; the construction and use of a courthouse.

3. The Bauerbands further contend that the lease purchase agreement does not meet the strictures of OCGA § 36-60-13. In doing so, the Bauerbands repeat, to an extent, arguments already addressed in considering the constitutional challenges to the statute: that the statute is violated because the lease agreement creates debt within the meaning of the Constitution and that it binds future County commissions to annual renewals of the agreement. These arguments are meritless.

The agreement provides that payments will be made as "Base Rentals," pursuant to an established schedule,[3] and as "Additional Rentals," which include fees for the services of the trustee, paying agent, and lessor. These fees are not set out in specific amounts, but are stated to be "the reasonable fees" for the associated services. OCGA § 36-60-13 (a) (3) requires that the contract state the "total obligation" incurred by the County in each renewal year, if the contract is renewed. The Bauerbands argue that the proposed contract fails to do so because it does not set forth a sum certain for the "Additional Rentals" in each prospective year of the contract. However, elsewhere in the statute, the General Assembly used the terms "sums payable in the individual calendar year renewal term" and "annual payments." See OCGA § 36-60-13 (c) & (h) (1) (A). Clearly, had the General Assembly wished to require that future obligations

---

[3] "Base Rentals" go into a fund used to pay holders of the certificates of participation.

be set forth as a sum certain, it knew how to accomplish that. See *City of Marietta v. Holland*, 252 Ga. 299, 301 (1) (314 SE2d 97) (1984). And, as the trial court noted, many obligations in a contract to be performed over time are based upon contingencies that may not be definitively quantifiable at the time the contract is initiated; this is true even for short-term contracts. The County's yearly obligations under the contract are established within the statute.

Nonetheless, the Bauerbands assert that, because the "Additional Rents" are not set forth in dollar amounts, the proposed contract raises the possibility that OCGA § 36-60-13 (h) (1) could be violated because the "average annual payments on the aggregate of all such outstanding contracts [may] exceed 7.5 percent of the governmental fund revenues of the county." OCGA § 36-60-13 (h) (1) (A). But, the contract also provides that payments can be made only from "legally available funds appropriated for such purposes," and that the contract is to be construed so as to comply with OCGA § 36-60-13. Thus, as the trial court correctly found, under the contract, any funds that would cause a violation of OCGA § 36-60-13 (h) (1), would not be "legally available."[4]

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 7, 2004 —
RECONSIDERATION DENIED JULY 14, 2004.

*Orr & Orr, E. Wycliffe Orr, Spence Johnson*, for appellants.
*King & Spalding, Nolan C. Leake, Daniel C. Haygood, Thurbert E. Baker, Attorney General, John B. Ballard, Jr., Senior Assistant Attorney General*, for appellees.

---

[4] The Bauerbands also assert that summary judgment was not warranted because the County's statement of material facts in support of summary judgment stated that the property on which the courthouse was to be built was owned by ACCG, when in fact it was then owned by the County. But this misstatement was corrected before summary judgment was granted, and the proposed lease purchase agreement clearly contemplates the acquisition of the land by ACCG before performance. Nor would current County ownership of the property mean that the proposed agreement is not one for the acquisition of real estate under OCGA § 36-60-13; the courthouse will become part of the realty, and in any event OCGA § 36-60-13 provides for the "acquisition of goods, materials, real and personal property, services, and supplies," which clearly encompasses all acquisitions the County will make under the agreement.