NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: November 29, 2022

S22D1240, S23A0104. ESPOSITO v. THE STATE.

BOGGS, Chief Justice.

This Court granted the application for discretionary appeal filed by John Anthony Esposito in this case because it appeared that "[t]he establishment of a precedent [wa]s desirable" on the issue of whether a trial court may refuse to follow a precedent of the Court of Appeals based solely on the trial court's disagreement with that precedent. Supreme Court Rule 34 (2). Accordingly, we address that specific issue below, holding that trial courts indeed are bound by the precedents of the Court of Appeals. Nevertheless, because we perceive no reason for this appeal to proceed on its merits beyond addressing that issue, we hereby vacate our order granting the application for discretionary appeal, deny the application for discretionary appeal, and dismiss this appeal, thus leaving the trial

court's judgment in this case undisturbed.

1. This case arises out of the filing of an extraordinary motion for a new trial by Esposito on September 16, 2021, which was just over three months after his federal habeas proceedings had concluded upon the denial of certiorari by the United States Supreme Court. See *Esposito v. Ford,* __ U. S. __ (141 SCt 2727, 210 LE2d 886) (2021). That extraordinary motion and its included motion for DNA testing were denied by the trial court on June 11, 2022. On July 11, 2022, Esposito filed in this Court an application for discretionary review of that denial. See OCGA § 5-6-35 (a) (7) (providing that an application for discretionary appeal is required to appeal the denial of an extraordinary motion for a new trial). This Court granted that application on August 8, 2022, specifically directing the parties to address this question: "May a trial court refuse to follow a precedent of the Court of Appeals on the ground that it was erroneous, when that precedent has not been overruled?" Despite our clear direction to address this question, the State filed a brief on September 28, 2022, in which it all but entirely ignored it.

2

Thus, on October 6, 2022, this Court ordered the State to file a substitute brief, which it did on October 11, 2022.

2. In denying Esposito's extraordinary motion for a new trial and its included motion for DNA testing, the trial court used a proposed order prepared by Senior Assistant Attorney General Sabrina Graham. In that order, the trial court denied the motions on three alternative grounds, the first of which concerned this statutory provision:

> (7) The court shall grant the motion for DNA testing if it determines that . . . all of the following have been established:
> . . .
>> (B) The evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect[.]

OCGA § 5-5-41 (c) (7), (c) (7) (B) (emphasis supplied). The trial court, quoting this provision, concluded:

> Defendant has not shown that the evidence has not been "altered in any material respect" regarding the two tree limbs and the eyeglasses. Specifically, Defendant has not shown that the DNA of others has not been transferred to the objects over the past twenty years.

The trial court then stated that it "acknowledge[d]" the unanimous 3-judge decision of the Court of Appeals in *White v. State*, which held in its core analysis as follows:

> It was not up to the trial court to determine from the testimony presented whether sufficient DNA, if any, was transferred to the spandex pants during the attack on the victim or whether it had deteriorated. Rather, the proper question was whether the pants were in a condition that would allow for the requested test to be conducted. Although the witnesses were doubtful that the pants might still contain testable biological material, they could not categorically deny that testable and usable DNA would be found when the pants were subjected to the GBI's testing protocol.
>
> Moreover, that any DNA transferred to the pants during the struggle between the victim and the perpetrator may have degraded over time, been altered, or become unusable does not speak to whether the *evidence* – the pants – were available for testing and had been subject to a chain of custody. Under the DNA statute, the evidence to be tested is not the same as the DNA potentially contained therein, as the statute draws a clear distinction between the two. See OCGA § 5-5-41 (c) (3) (A) (providing that the petitioner must show that "[e]vidence that potentially contains *[DNA]* was obtained in relation to the crime[.]" (emphasis supplied). This is a critical statutory distinction that the trial court's consideration of White's motion failed to make.
>
> Finally, the portions of the DNA statute analyzed by the trial court require the petitioner to make only a

4

threshold factual showing of the listed factors, namely that the evidence to be tested is available and that it has been subject to a chain of custody. The statute does not permit the trial court to speculate as to the viability of any DNA potentially located on the evidence in question. To permit such speculation to factor into whether the petitioner should be afforded the right to test the evidence for DNA in the first instance violates the clear directive of the General Assembly and, as a practical matter, would likely exclude DNA testing of all but the most recently and pristinely stored physical evidence. That violates both the spirit and the letter of OCGA § 5-5-41 (c).

*White v. State*, 346 Ga. App. 448, 455-456 (2) (814 SE2d 447) (2018) (alterations in original). See also *Mincey v. State*, 360 Ga. App. 219 (860 SE2d 841) (2021) (applying *White* and holding that the trial court erred in finding an insufficient chain of custody where evidence had been held in police custody but where the mere possibility of tampering could not be excluded).

Despite acknowledging this detailed, clear, and directly applicable holding, the trial court's order refused to follow it, providing no reason other than a bare assertion that

the clear and unambiguous language of subsection (c)(7)(B) is that Defendant must show "that the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been . . . altered in

5

any material respect."

Not only was this language in the trial court's order proposed by Senior Assistant Attorney General Graham, it also was later actively defended by the State before this Court in its response to Esposito's application for discretionary appeal, which stated unabashedly: "To the extent that *White* holds in contravention of the plain language of the statute, it was not binding on the trial court."

Having previously asserted otherwise in the trial court and in its response to Esposito's application for discretionary appeal and having previously ignored this Court's clear direction to defend its position in this appeal, the State now states in the substitute brief that this Court ordered it to file: "After further analysis and review of the issue, the State concedes it was in error and should not have made this argument to the trial court." This belated concession is obviously correct. The Georgia Constitution states clearly: "The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court

6

as precedents." Ga. Const. of 1983, Art. VI, Sec. V., Par. III. We hold that this provision in the Georgia Constitution plainly answers the question presented for review in the negative and that trial courts indeed must follow the precedents of the Georgia Court of Appeals. Cf. *Bauerband v. Jackson County*, 278 Ga. 222, 224 (1) (598 SE2d 444) (2004) (applying a similar principle of Ga. Const. Art. VI, Sec. VI, Par. VI for the proposition that the decisions of our Court, even if wrong, are "binding on the court below"). The State should not have argued otherwise, and the trial court should not have adopted such a patently frivolous argument.

3. Although the matter discussed above establishes precedent explaining the very serious flaw in part of the trial court's analysis in *one* of its *three* alternative bases under OCGA § 5-5-41 (c) (7) for denying Esposito's extraordinary motion for a new trial and its included motion for DNA testing, our review of Esposito's application reveals no apparent reversible error in the trial court's disposition of the other two alternative bases. Cf. Supreme Court Rule 34 (1) (providing that an application for discretionary appeal

7

will be granted where "[r]eversible error appears to exist"). Accordingly, as there remains no basis for considering Esposito's appeal further, we vacate our prior order granting Esposito's application for discretionary appeal, we deny that application, and we dismiss the pending appeal.

*Prior judgment granting application vacated and application denied in Case No. S22D1240. Appeal dismissed in Case No. S23A0104. All the Justices concur, except Warren, J., not participating, and Pinson, J., disqualified.*